Hillsborough, }
June 30, 1903. }

LEIGHTON *& a.* v. CONCORD & MONTREAL RAILROAD *& a.*

The statute providing that the board of railroad commissioners may authorize a change in the location of a highway, for the purpose of avoiding or improving a grade crossing, empowers them to discontinue that portion of the old highway for which the new way is a substitute.

When a portion of a highway is discontinued by the board of railroad commissioners for the purpose of improving or avoiding a grade crossing, an adequate remedy is provided for the assessment of all damages resulting therefrom by section 18, chapter 159, Public Statutes.

The board of railroad commissioners have no authority to lay out a new high-
way for the purpose of affording more convenient access to a railroad
station.

The writ of *certiorari* is not awarded, although a review of the record shows
that there was a defect in the proceedings, if the party seeking redress has
another remedy that is ample and convenient.

PETITION, for a writ of *certiorari*. Facts agreed, and case
transferred from the May term, 1903, of the superior court by
*Pike*, J.

Upon the petition of the Concord & Montreal Railroad, the
board of railroad commissioners authorized the corporation to
change the location of a portion of a highway in Goffstown, where
it was crossed at grade by a branch of the corporation's railroad,
for the purpose of avoiding the crossing. The change consisted
in discontinuing about 1,500 feet in length of the old highway,
substituting for it a new highway located southerly of the old,
and having a bridge over the railroad. The Concord & Montreal
Railroad have filed a location for the new portion of the highway,
in accordance with the requirements of the statute, and have taken
steps to have the damages assessed for the land taken. Leighton
has taken an appeal to the superior court from the award of
damages to him by the railroad commissioners and selectmen,
and prays that the damages which have accrued to him by the
taking of his land and the discontinuance of the old highway may
be assessed by a jury. His petition alleges that the portion of
the highway discontinued passed through land owned by him
and in close proximity to his dwelling-house, and furnished the
only means of access to the house and appurtenant buildings.

The corporation's petition to the board of railroad commission-
ers, for authority to make the change, alleged, among other things,
that "for the purpose of affording access to the new station to be
erected at the junction of its Manchester & North Weare branch
with its Manchester & Milford branch, it is necessary and for the
public interest to lay out a new highway from the highway" con-
templated in the change, in a northerly direction to land of the
corporation, on a route particularly described. The board did not
attempt to lay out this highway upon that petition; but the cor-
poration subsequently filed a supplemental petition for the pur-
pose, and the board were about to grant its prayer when further
action was suspended pending the determination of their power in
the premises.

*Taggart, Tuttle & Burroughs*, for the plaintiffs.

*John M. Mitchell* and *Edwin F. Jones*, for the defendants.

CHASE, J.   " The board of railroad commissioners, upon petition of the proprietors of a railroad, after notice and hearing,   .
. .   may authorize the proprietors of a railroad to change the location of a highway or other way for the purpose of avoiding or improving a crossing of the highway by the railroad, or of enabling them to properly construct the railroad ; and the proprietors, whenever so authorized, may make such changes." P. S., *c.* 159, *ss.* 13, 14.   The change under consideration was made under this statute.   The plaintiffs allege that the action of the board of railroad commissioners was illegal because (1) the board had not power to authorize the discontinuance of a highway ; (2) if they had such power, it can be exercised only upon assessing the damages suffered by the owners of land bordering upon the discontinued highway ; and (3) they had not power to lay out a highway.   The position is taken that if the statute does not authorize the board to assess the damages resulting from the discontinuance of the highway involved in the change of location, the statute is unconstitutional.

(1) The statute does not, in express terms, empower the board of railroad commissioners to discontinue, or authorize the discontinuance of a highway ; but the necessary effect of a change in the location of a highway is the discontinuance of the portion that occupied the old location and the substitution therefor of the portion that occupies the new location.   If the old portion were not discontinued, there would be no change of location ; the change would be simply the creation of a new piece of highway, leaving the old piece in existence with its objectionable grade crossing. The railroad corporation's burdens would be increased without removing the cause of danger to public travel.   A change in the location of a highway, according to the ordinary meaning of the term, is a removal of the highway from one place to another. After the removal, the highway does not exist in its former place.

The legislature has conferred general authority to discontinue highways upon towns, or the court, or towns and the court together (P. S., *c.* 72), but this does not deprive the legislature of power to confer the authority upon other bodies or tribunals in special cases, if they see fit.   Section 14, chapter 159, Public Statutes, confers the authority upon the board of railroad commissioners in cases in which the public good requires the discontinuance of a portion of a highway and the substitution of a new portion, to avoid or improve a grade crossing.   Such cases are impliedly excepted from the operation of the general provisions contained in chapter 72.   The reason for the exception is apparent.   There would be liability to conflict or confusion in the results if the matter of changing the location of a highway, or rather of deciding upon a new location, were left to one tribunal

(the board of railroad commissioners), and the matter of discontinuing the old highway containing the objectionable crossing were left to another body or tribunal (the town, or the court, or both). There would be great danger that the object in view would be defeated in many instances if the authority were thus divided. The board of railroad commissioners can act only upon petition, and after notice and hearing. P. S., c. 159, ss. 13, 14. The rights of parties entitled to a hearing are as well guarded in this respect as they are under the provisions of chapter 72. Parties have no reason to complain because they are sent to this board for a hearing instead of some other tribunal. That is a matter over which the legislature have complete control.

(2) Is provision made in the statutes for the assessment of the damages suffered by the owners of land bordering upon the discontinued portion of highway? A review of the legislation on the subject will throw some light on this question. Soon after the first railroads were built, towns were empowered to require railroad corporations to secure highway crossings by bridges over their railroad, or gates on the sides of the highway; and if the requirement was not complied with within six months after notice, the selectmen of the town were directed to cause the rails to be removed from the highway, and the corporation was not allowed to run engines and cars across it for the time being. Laws 1841, c. 612; R. S., c. 142, ss. 4, 5. Later, corporations were granted the right of appeal from the action of a town, and also the right themselves to petition the court for authority to erect bridges or gates at crossings when they deemed it necessary for the public safety; and if additional land was necessary for the purpose, they were empowered to take it. Provision was made for assessing the damages suffered by individuals by the taking of their land, or the erection of the bridges or gates. Laws 1846, c. 335. In 1847, a right of action to recover reasonable damages was given to persons who suffered inconvenience or injury to their lands or rights by an alteration or obstruction of a highway, turnpike, bridge, or private way, made by a railroad corporation in the construction of its railroad over, under, or near such highway, etc., or by a continuance of such alteration or obstruction for sixty days after notice in writing of its existence. But a corporation causing damage was authorized to apply to the road commissioners of the county, within the sixty days, to lay out a substitute for such highway, etc., and they were empowered, after notice and hearing, to lay it out and assess damages as in ordinary highway cases; and if the corporation built the substitute highway in the manner and within the time prescribed by the commissioners, and otherwise complied with the requirements of

the statute, no action could be maintained against it. Laws 1847, *c.* 486 ; *Clark* v. *Railroad*, 24 N. H. 114. Upon the enactment of the General Statutes, these statutes were revised and materially changed in some particulars. Among the changes there may be noted the transfer of the gates to the sides of the railroad, and the substitution of a penalty for failure to comply with the town's requirement, in the place of an interference with the railroad and its operation, but the methods to be employed for improving crossings were not enlarged. G. S., *c.* 147. The provisions of the General Laws (*c.* 161) are identical with those of the General Statutes. In 1885, a new and important remedy was created for making crossings safer. It was provided that " a railroad corporation may alter the course of a highway or other way for the purpose of facilitating the crossing of the same by its road, or of permitting its road to pass at the side thereof without crossing, upon obtaining the written consent of the railroad commissioners, but such consent shall not be given until all parties in interest shall have been duly notified and heard." Laws 1885, *c.* 98, *s.* 8. This was the first introduction into the general statutes of an express provision for the change of the location of a highway for the purpose of improving railroad crossings, except in cases in which damages were claimed for altering or constructing highways. Upon the revision of the statutes in 1891, an attempt appears to have been made to consolidate such of these provisions as were retained into a few sections that would cover the whole ground. As has been seen, the prior statutes covered the following cases : (1) Those in which a town required a railroad corporation to bridge the crossing or protect it by gates, and in doing so it was necessary to raise or lower the grade of the highway ; (2) those in which the corporation, of its own motion, wished to do this ; (3) those in which damages were claimed of the corporation for altering or obstructing a highway, in which cases the corporation might, under certain circumstances, obtain leave to construct a substitute for the highway and relieve itself from liability ; and (4) those in which the corporation wished to alter the course of the highway for the purpose of improving the crossing. Sections 13 and 14, chapter 159, Public Statutes, cover the cases mentioned in subdivision 1. There is no provision for the cases mentioned in subdivision 3, for the reason evidently that there was no occasion for it. If a corporation desires to alter or obstruct a highway, ample provision is made for obtaining authority to do so, if the public good requires it ; if a corporation sees fit to make an alteration without first obtaining authority, the common law affords adequate remedies to the parties injured. After providing a method by which the grade of

a highway may be raised or lowered for the purpose of separating it from that of the railroad, both upon the motion of the corporation itself (s. 13) and upon the requirement of a town (ss. 15, 16, 17), and a method by which a change in the location of a highway may be made for the purpose of avoiding or improving a crossing (s. 14), provision is made by section 18 as follows: "The proprietors may take and hold such land or rights in land as may be necessary to enable them to make changes in highways as authorized or required by this chapter [ss. 13–17], by filing a location thereof, as provided for filing the location of a railroad; and the parties shall have like remedies for a change of location and for the appraisal of damages as in such case." They may take not only land, but rights in land, if necessary for the particular purpose. If in raising or lowering the grade of a highway it is necessary to take the right which the owner of adjoining land has to pass between it and the highway, this may be done, although none of his land is taken. So, also, if it is necessary to change the location of a highway and thereby discontinue a portion of an old highway, the right of the adjoining owner to have the old highway continue may be taken. In this case, if Leighton's right in the discontinued portion of the highway was special and particular, by reason of the fact that his land bordered upon it, and so differed from the rights of the public in general (*Cram v. Laconia*, 71 N. H. 41), this right could be taken as well as land of his over which the substituted highway is laid. There was no practical difficulty in filing the location for the change so that it would show that both land upon which the new highway was to be located and rights in the discontinued highway of owners of land bordering upon it were included in the taking. Indeed, the description of the substituted highway according to the provision of the statutes "for filing the location of a railroad" (P. S., c. 158, ss. 3, 4), accompanied with a declaration of the purpose to make the substitution, would necessarily imply the discontinuance of the old highway and the taking of the rights of parties therein. No question is made regarding the regularity or character of the location in this case. If any landowner was dissatisfied with the location, he was at liberty, at any time before his damages were assessed, to apply to the railroad commissioners to have it changed; and they were empowered to make a change if they found that the public good required it. P. S., c. 159, s. 18; *Ib.*, c. 158, s. 7.

The location having been made, the parties were entitled to like remedies for the appraisal of damages as in the case of the location of a railroad. P. S., c. 159, s. 18. Here it will be noticed that the damages are not limited to those resulting from

the taking of land for the substituted highway. The language is broad enough to include all damages resulting from the change to which the parties are entitled. If the corporation cannot settle with the parties, it may petition to the railroad commissioners and have the damages assessed by a joint board consisting of the commissioners and the selectmen of the town; and they may ultimately be assessed by a jury if either party is aggrieved by the award of the joint board. P. S., *c.* 158, *ss.* 9–21. If these provisions were not sufficient to authorize the assessment of all damages occasioned by the changes contemplated, a railroad corporation might be required by the action of a town to do what it would find itself incapable of doing because of the want of power to acquire the land, or rights or privileges in land, necessary for the purpose. The raising or lowering of the grade of a highway might in some cases result in the practical discontinuance of the highway, so far as adjoining land is concerned. Moreover, the vote of a town is not the final action that can be had; the railroad corporation may apply to the board of railroad commissioners for a review of the action, and the board may make " such order in respect thereto as they judge the public good requires." It may be that they would find that the public good required a change of location of the highway to avoid the objectionable crossing, instead of a raising or lowering of the grade, and would so order. Whatever their order is, if within the scope of their authority, the corporation must comply with it or subject itself to the liability of being fined not exceeding one thousand dollars. P. S., *c.* 159, *ss.* 15, 16, 17. It cannot be doubted that the legislature intended to give railroad corporations all the authority that would be necessary to carry these provisions into effect. If the language used in respect to damages were ambiguous, the legislative intent would have controlling weight in removing the ambiguity. There would also be a presumption, to be taken into consideration, that the legislature intended to adopt methods that do not conflict with the constitution.

It appears from these considerations that the statute does not have the constitutional defect alleged by the plaintiffs. The board of railroad commissioners had authority to change the location of the highway, and incidentally to discontinue a portion of the old highway for the purpose of abolishing the grade crossing in question.

(3) The Concord & Montreal Railroad's petition to the board of railroad commissioners asked the board to lay out a new highway from the substituted highway to a new station, to be erected by the corporation, alleging that it is necessary for the public interest in affording access to the new station. The new highway

is no part of the change to be made in the location of the old highway for the purpose of avoiding the crossing, but is an independent matter designed for a different purpose. If the old highway continued unchanged, there would apparently be the same necessity for a part of the new highway. The board of railroad commissioners are not authorized to lay out a new highway under such circumstances. This matter is governed by the general provisions of the statutes relating to the laying out of highways. P. S., cc. 67, 68.

(4) The writ of *certiorari* is not awarded, though a review of the record of the tribunal shows that there was a defect in the proceedings, if the party seeking redress has another remedy that is ample and convenient. *Petition of Tucker*, 27 N. H. 405; *Boston & Maine R. R.* v. *Folsom*, 46 N. H. 64; *Logue* v. *Clark*, 62 N. H. 184; *Grand Trunk R'y Co.* v. *Berlin*, 68 N. H. 168, 170. If Leighton's damages were not assessed in accordance with his rights, he has an ample and convenient remedy in the appeal from the award, which it seems he has already taken. P. S., c. 158, s. 17. As the board of railroad commissioners have not attempted to lay out the highway to the new station, there is no occasion for a writ of *certiorari* on that account. The prayer of the plaintiffs' petition should be denied.

*Case discharged.*

BINGHAM, J., did not sit: the others concurred.