Merrimack. ⎰
June 8, 1906. ⎱

BLAKE & a. v. CONCORD & MONTREAL RAILROAD & a.

The board of railroad commissioners have no power to discontinue any part
   of a highway for the purpose of avoiding or improving a grade crossing,
   except as such discontinuance results from a change in location.
An order of the board of railroad commissioners discontinuing a portion of
   an existing highway and laying a portion in another place is not a valid
   exercise of their power to effect a change in location, unless the new route
   will serve substantially the same public need as the old one and will
   accommodate with greater or less convenience the same travel.

PETITION, for a writ of *certiorari* to the board of railroad com-
missioners. Facts found, and case transferred from the October
term, 1905, of the superior court upon an alternative order, by
*Pike*, J.

*Martin & Howe* and *Sargent, Remick & Niles*, for the plaintiffs.

*Mitchell & Foster*, for the defendants.

PARSONS, C. J. The superior court made a conditional order,
granting the writ if the commissioners erred as matter of law in
making an order discontinuing " that part of Ferry street between
the easterly line of the right of way of the Concord & Montreal
Railroad and the westerly line of the right of way of the Concord
& Claremont Railroad." Ferry street is an ancient highway, and
the portion discontinued is about 320 feet in length and is now
crossed at grade by the right of way and tracks of the Concord &
Claremont, the Northern, and the Concord & Montreal railroads.
There is no exception to the order of the superior court, nor is
there exception to any matter of evidence or procedure, so that
the only question presented by the case is as to the power of the
board of railroad commissioners. Considering only the order
objected to, the case discloses an attempt to avoid or improve a
grade crossing by the simple expedient of abolishing so much of
the highway as is crossed by the railroad right of way. If author-
ity has been conferred upon the tribunal in question to avoid or
improve an existing grade crossing of a railroad and a highway
by discontinuing the highway at the point of crossing, because the
public good requires such discontinuance on account of the
dangerous character of the crossing, or because the public are
otherwise sufficiently accommodated, the power to make the order

would be clear upon the facts. The crossing upon the evidence might be found to be one of special danger, and it could also be found that the public travel now served by the Ferry-street crossing is sufficiently provided for by the existing route, by way of Stickney avenue and Bridge street. The general highway discontinuing power has been heretofore by statute vested in the town, or in the courts, or in both combined, according to the location or manner of creation of the particular highway whose discontinuance is proposed. P. S., *c.* 72, *ss.* 1, 2. Such being the general rule, to sustain the power of the commissioners to discontinue portions of highways forming railroad grade crossings authority therefor must be found in some special provision. The only source of such jurisdiction applicable to the case that is suggested is section 14, chapter 159, Public Statutes, which empowers the board of railroad commissioners, upon notice and hearing, to authorize the proprietors of a railroad to change the location of a highway for the purpose of avoiding or improving a crossing of the highway by the railroad.

It has recently been held that the railroad commissioners are not in express terms empowered to discontinue or authorize the discontinuance of a highway, but that the necessary effect of changing the location of a highway under this section is the discontinuance of so much of a highway as occupies the old location and the substitution therefor of the portion which occupies the new location. *Leighton* v. *Railroad*, 72 N. H. 224, 226. It was also held in the same case that the railroad commissioners have no authority to lay a new highway which is no part of a change made in the location of an existing highway for the purpose of avoiding a crossing. The same reasoning requires the conclusion that the commissioners have no authority to discontinue any part of a highway, except as such discontinuance results from a change in location. A petition to the commissioners, therefore, to discontinue a particular portion of a highway, or to lay a highway between certain *termini*, would not call for an exercise of the power conferred upon them; and an order from them discontinuing a certain portion of an existing highway, or laying a new highway, without more, would not be an exercise of the limited power as to highway creation or discontinuance vested in them. A petition to the commissioners to discontinue a particular portion of Ferry street and an order granting the same cannot be sustained by showing that the crossing is dangerous and not needed by the public. The power conferred upon the commissioners is merely to change the location of existing ways. As a result of the due exercise of the power conferred upon them, the part whose location is changed ceases to be a highway,—is discon-

tinued,—not because it has been determined by competent authority that the public good does not require the highway, but because the particular location of that portion of the highway has been removed to some other spot; and the place where such highway is relocated becomes a highway, not because the commissioners have authority to decide that such a highway is required, but because of the relocation of a highway the necessity for whose existence has been otherwise determined.   The question of the necessity for the existence of the highway in some location is not submitted to the commissioners.   The determination of that question by the authorized tribunal still stands unaffected by the action of the commissioners, whose power is limited to the location upon the ground of a highway which, so far as their action is concerned, it is conclusively presumed the public good demands. The power conferred upon them is analogous to that given municipal officers under the street railway statute (Laws 1895, c. 27, s. 5) to locate such railways upon public highways, while the necessity for the railway itself over a specified route is determined by another tribunal.   Sections 13 and 14, chapter 159, Public Statutes, so far as they relate to the avoidance or improvement of existing grade crossings, originated in chapter 98, Laws 1885. Thereby a method is provided (Laws 1885, c. 98, s. 7; P. S., c. 159, s. 13) whereby a railroad corporation might obtain authority to alter the grade of a highway for the purpose of having the road pass over or under the same, or (Laws 1885, c. 98, s. 8; P. S., c. 159, s. 14) to alter the course of a highway "for the purpose of facilitating the crossing of the same by its road, or of permitting its road to pass at the side thereof without crossing"; but neither in the original act nor in the revision is power given the commissioners to authorize the avoidance of the crossing by abolishing the highway.

The statutes relating to the occupation and obstruction of existing highways by railroads are historically reviewed in *Leighton* v. *Railroad, supra.*   From the examination there made, it is clear that it has never been intended that existing highways should be discontinued for railroad purposes, except by the substitution of some other equivalent highway.   It seems probable that had it been intended to entrust to the railroad commissioners the decision of the general question of the public need of a particular highway crossing a railroad, apt language would have been used to confer the power.   In the absence of such language, we are constrained to follow the recent decision in *Leighton* v. *Railroad* and to reaffirm the conclusion there reached as to the want of power in the railroad commissioners to lay or discontinue a highway, except as either may result from a change of location in an

existing way. But while the commissioners' power in strict terms is merely to change the location of an existing way, a convenient method of defining the change of location which they have power to make may be to describe as discontinued that portion whose location is changed, since such discontinuance would result from a change of location, and to refer to the new location as a new highway.

Whether the discontinuing of a portion of an existing highway and the laying of a portion in another place is a change of location of an existing highway, and does not constitute separate acts of attempted highway discontinuance and creation, may be largely a question of fact. To bring the orders made within the highway power of the railroad commissioners, it must appear that they effect substantially a change of location. It may not be necessary that the newly located portion should start at the point of discontinuance and rejoin the old route at the end of the portion discontinued, as was the case in *Leighton* v. *Railroad*, nor is it probable that it was intended that any technicality as to the precise identity of the new and old roads should limit the power conferred; but it is apparent that the new route must serve substantially the same public need as the old, and accommodate with greater or less convenience the same travel. If it does not do this, we have not the old highway in a new location, but a new highway. The order objected to, taken by itself alone, is, as has been said, an attempt merely to discontinue a public highway at a railroad crossing, and is beyond the power of the commissioners. It appears, however, that the order is only a part of a general scheme involving numerous changes in highways in a city; and if it were found as a fact that this discontinuance, in connection with some other order locating a highway, was substantially a change of location of a portion of Ferry street, the orders, though incorrect in form, might be upheld as being in effect within the power of the tribunal.

The petition to the board alleges that certain grade crossings in the city, of which the Ferry-street crossing is one, are dangerous and inconvenient, and should be avoided and improved, and that for the purpose of avoiding and improving the same for the public safety and convenience, as well as for the interest of the petitioners, it is, or will be, necessary to make certain changes in highways in the city,—the changes desired being described as the discontinuance of certain highways and the laying of certain others,—and asks authority from the board to make the desired changes. The order of the board follows more carefully the language of the statute and authorizes certain changes in the location of highways in Concord, describing them in the manner of the petition. The only

remaining question, therefore, is whether the discontinuance of the portion of Ferry street in question results from a change in location effected by the orders made.

While the purpose to effect a discontinuance of this part of the street is clearly expressed, there is nothing in the order to indicate where the commissioners understood they had established a relocation of this portion of Ferry street, and it is not found that any way laid by them subserves the same public need. There is nothing in the order or facts before the court from which a change of location can be made out. The order of discontinuance is separate and distinct. No description of a road laid is joined with the discontinuance in such a manner that it can be inferred in what way the commissioners considered the two acts to constitute an exercise of the highway relocating power which they possessed. The petition to the board, in the same paragraph in which the discontinuance of a portion of Ferry street, about 320 feet long, is asked, also requests the laying of a new highway, 6,884 feet in length, from a point on Ferry street to a point in East Concord. From this it might be inferred that the petitioners understood they were asking for a relocation of Ferry street. While the commissioners appear to have granted this latter request by the seventh paragraph of their order, there is nothing in their record to show that they understood this road to be a relocation of that portion of Ferry street discontinued by the fourth paragraph.

It does not appear that this road would serve the public travel now using Ferry street. Main street in Concord runs north and south, substantially parallel with the railroad tracks. East Penacook, Ferry, and Bridge streets run easterly from Main street, the last two crossing the tracks of the three railroads near Main street, while East Penacook street does not cross the tracks of the Concord & Montreal Railroad until after crossing the Merrimack river some over a mile distant. Bridge street also crosses the river, while Ferry street within modern times has not crossed the river, but leads merely to the intervale between the railroad and the river. It accommodates the owners of land upon the intervale, and a few business enterprises and dwellings just east of the tracks. Its purpose as now existing is to furnish communication between the city of Concord, of which Main street is the principal street, and land east of the railroads. As has already been suggested, the same territory is also served by Stickney avenue and Bridge street. There is nothing to show that there is any occasion for direct communication between the intervale land reached by Ferry street and East Concord. There is no direct communication now. Ferry street does not supply it, and a highway designed to furnish accommodation which Ferry street does not

supply is, manifestly, not Ferry street. The inference from the facts reported is that the highway laid from Ferry street to East Concord 'is intended for a purpose entirely different from that of any portion of Ferry street as it now stands. No question as to the validity of the laying for the apparent purpose is before the court, or considered. It is true that by proceeding northeasterly on the new highway for a considerable distance, by another highway, and by East Penacook street, Main street may be reached by a grade crossing, but the route is circuitous and crosses two railroads at grade. It is manifest that under the proposed arrangement all the travel now carried by Ferry street must reach the city by Stickney avenue and Bridge street, and that so far as Ferry street is concerned the proposed ·change is not a relocation of Ferry street, but merely an attempt to discontinue a portion of it. As the commissioners have no general highway discontinuing power at grade crossings or elsewhere, the order made by them cannot, on the facts shown, be found to be within the power of the board: '

*Case discharged.*

CHASE, BINGHAM, and YOUNG, JJ., concurred: WALKER, J., concurred in the result.