THE STATE EX REL., ETC., *v.* ALABAMA & VICKSBURG RAILWAY CO.

1. RAILROADS. *Supervision. Removal of site for depots. Act 1890.*
   Changing the site of a station-house from one place to another in the same town for reasons of convenience, necessity, or the public good, is not within the meaning of § 4, act of February 22, 1890 (Laws p. 106), which prohibits the " abolishment or disuse of any depot when once established," without the consent of the railroad commission.

2. SAME. *Change of site for depot; when permitted.*
   Such change can only be made without the approval of the commission when the proposed new site is convenient and accessible, and when the interest of the public and that of the railroad company concur in demanding the change.

3. SAME. *Finding of railroad commission not conclusive. Case in judgment.*
   Notwithstanding the state railroad commission has declared a proposed new site to be inconvenient, and ordered a new station-house erected on the site of the old, a bill filed, under the order of the commission, by the representative of the state to enforce compliance and to enjoin the removal, cannot be maintained unless it is made to appear by evidence that the new site is inconvenient and inaccessible, regard being had to the interest of the railroad company and the public.

FROM the chancery court of Warren county.

HON. CLAUDE PINTARD, Chancellor.

Section 4 of the act amendatory of the railroad supervision laws of this state, approved February 22, 1890 (Laws 1890, p. 106), is as follows :—

"Every railroad company shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require. And it shall be unlawful for any such company to abolish or disuse any depot when once established or to fail to keep up the same and to regularly stop the trains thereat without the consent of the railroad commission. The railroad commission shall have the authority to cause to be instituted and prosecuted all proper legal proceedings by mandamus or otherwise to enforce the provisions of this act."

The bill in this cause was filed by the state of Mississippi on the relation of J. M. Gibson, district-attorney, against the Alabama & Vicksburg Railway Co. to enforce compliance with an order passed by the railroad commission of Mississippi, requiring the defendant company to erect in the city of Vicksburg a new passenger depot building on the site of its old depot building, which had been previously condemned by the commission. The bill also sought to enjoin the railroad company from erecting a new passenger depot in that city upon a site which the company had selected for the purpose, and upon which it had already begun to build.

The opinion contains a statement of the facts sufficient for an understanding of the points passed upon. A vast amount of testimony was taken upon both sides relative to the suitableness of the new site which the company had selected, the contention in behalf of complainant being that it was inconvenient and inaccessible, while the defendant claimed the contrary.

Since this court declines to disturb the finding of facts by the court below, it becomes unnecessary to set out the evidence or the briefs of counsel touching that question, or to mention the arguments drawn from the constitution and the several statutes as to the power of the railroad commission and the right of complainant to resort to this proceeding. On the final hearing the chancery court dismissed the bill, and the state prosecutes this appeal.

*T. M. Miller,* attorney-general, for appellant.

Since the railroads are subject to supervision and regulation by the state through its railroad commission, and since the commission

has in this matter acted within the scope of its powers and duties, the courts will not assume the right to set aside its finding. Certainly they will not do so unless the error has been gross and manifest. It would seem superfluous to argue that the legislature may protect the public of any locality by providing, as it has done, that a depot once established and found to be convenient, shall not be discontinued without the consent of the railroad commission. But if it be allowable to the chancery court under any circumstances to vacate an order made by the commission in reference to the location of a depot, a matter which has been committed by law to that tribunal alone, I still earnestly maintain that the chancellor erred in supposing that the clear weight of evidence was in favor of the accessibility and convenience of the proposed new site.

*J. M. Gibson,* on the same side.

The proposed action of the railroad company in abandoning or disusing a depot already in use without first obtaining permission from the railroad commission is plainly violative of section 4 of the act of 1890.

The defendant was given full time to comply with the order of the commission, but took no steps to obey, but, on the contrary, proceeded with the erection of its passenger depot at Cherry street crossing, thus showing its unlawful intention to abandon and disuse the old depot. It has preferred to treat the order of the commission with contempt.

The question of the convenience and accessibility of the new depot was passed upon by the commission, a tribunal vested with the power to adjudicate finally such matters. Its finding is *res judicata* until successfully attacked in some legal proceeding brought by defendant to annul its order. The railroad company cannot urge that the commission by acquiescence or delay gave consent to the building of the new depot. The particular persons forming the court cannot by silence or inaction make an act legal which the law condemns as a crime. Whenever a corporation assails the decree of the commission, the burden of proof arising on the facts is with it.

*W. L. Nugent,* for appellee.

A fair construction of the several statutes on the subject justifies the conclusion that the railroad commission may, when the public interest or that of the company demands, order the establishment of a new station and construction of a new depot at any point on the line of a railroad. But, when this is done, the selection of the particular site of ground on which the depot is to be placed is of necessity left first to the company, for the company may not hold lands at the most favorable place, and must of necessity govern itself by its own holdings. If the site selected is inconvenient or inaccessible, the commission may designate the site on the line of railroad " having in view the interest of the public and the railroad company." The whole grant of power under the statute presupposes the non-existence of the station and no depot building thereat. When there is an existing depot the power of the commission is limited to the enforcement of common law obligations, or as the law has it, " to see that at least one comfortable and suitable reception room is provided." Nowhere is the commission authorized to dismantle and tear down an existing depot at an existing station, and have a new one put in its place. In any event, before the commission may fix the site, that selected by the company must be shown to be inconvenient and inaccessible. The court will find an extended discussion on the subject of compelling the removal of depots in the following cases : *People* v. *R. R. Co.*, 48 Am. Rep. 484 ; *People* v. *R. R. Co.*, 35 Am. & Eng. Ry. Cases, 462 and notes ; *People* v. *R. R. Co.*, 40 Ib. 352. These decisions were rendered by courts in states where the power to alter, amend or repeal charters existed, and where the remedies asked were by mandamus.

The proceeding here is not to compel the establishment of a station, but to interfere with the right of the railway company to separate its freight and passenger depots, in a case where both the public interests and that of the company demand it.

I submit that the evidence wholly fails to show that the new site is inconvenient and inaccessible. The weight of evidence is clearly to the contrary.

Argued orally by *W. L. Nugent,* for appellee.

Woods, J., delivered the opinion of the court.

The evidence in the record before us does not bring this case within the terms of section 4, chapter 88, Laws of 1890. That section forbids the abolishment or disuse of any depot when once established, without the consent of the railroad commission. The Vicksburg depot is not shown to have been either abolished or disused. The mere site of the station-house for passengers has been changed, or is threatened to be changed; but the change of the site of the station-house for passengers from one spot to another in the same town, for reasons of convenience, or business necessity, or public good, is not the abolishment or disuse of the depot in such town. The legislative purpose was to prevent towns and communities being deprived of the uses and benefits of depots in their midst, after the same had been once established, at the pleasure or caprice of railroad companies. It needs no argument to demonstrate the distinction between abolishing a depot—wiping it out of existence—and merely changing its site in the same town, in order to render its existence more beneficial. We must not suppose the legislature intended to clothe the railroad commission with the power to fix unalterably the sites of station-houses in particular spots, in the absence of an express declaration to that effect; nor are we warranted, by any known rules of construction, in holding that railroads are forbidden to make convenient changes of sites for station-houses in a particular community, because they are forbidden to abolish—wipe out of existence—or discontinue the use of a depot at all in such community. The proposed change of site only may be made, we think, when the public interest and the interests of the railroad company concur in demanding it—provided, the new site selected be not inconvenient or inaccessible.

This brings us, now, to the chief ground of contention. Was the proposed change of site of the passenger depot to Cherry street one involving inconvenience and inaccessibility of location, regard being had to the interests of the public and the railroad company? The question is one of fact purely, but before proceeding to answer

it, let us recall certain undisputed preliminary facts of great value in fairly determining the issue, viz : The railroad commission, on Feb. 9, 1888, made an order condemning the passenger depot of appellee at Vicksburg ; on the 18th of March, 1889, the railroad commission ordered the construction of a new passenger depot at Vicksburg, and directed plans of such depot to be submitted to the commission for approval on or before the 15th of April, 1889 ; on the 7th day of May, 1889, the railroad commission ordered the erection of a new passenger depot at Vicksburg, in accordance with plans theretofore submitted to and approved by the commission, and the building was required to be completed within ninety days from the date of the order ; this order for the erection of a new passenger depot was rescinded, on Sept. 16, 1889, by the railroad commission, because of the refusal of the municipal authorities of Vicksburg to permit the erection of the building ; after the rescission, on Sept. 16, 1889, of the order of May 7, the old depot having been condemned, and the interests of the railway company and of the public alike requiring a new depot on a new and better site, as the management of the railroad saw the matter, work was begun and material gathered at Cherry street to erect a new depot at that point ; the plans for the Cherry street depot were submitted to the railroad commission, either officially or unofficially, and approved by it with full knowledge of the fact that these plans were for a new depot at a new site ; and no disapproval of the change was announced by the railroad commission ; in this state of affairs the railroad company spent much money and made much preparation for building at Cherry street, and actually began the erection of the new depot at that point ; on the 8th day of July, 1890 [about nine months after the railroad commission had rescinded its order directing a new depot at the old site], the railroad commission cited the railway company to appear before it on July 18, and show cause why it should not cease work upon its new depot, and why it should not be required to erect a new station-house on the old site, as prayed in a petition then filed with the commission by R. F. Beck, mayor of Vicksburg ; on the 15th day of July, 1890, the railroad commission, by its order, declared the Cherry street site inconve-

nient, and ordered the new depot erected, in effect, on the old site, in accordance with the plans and specifications prepared for the Cherry street site, and with no sort of reference to the old one.

It must be borne in mind, furthermore, that when this last order of the railroad commission was made, the city authorities of Vicksburg had not consented to the closing of South Madison street— a step indispensably pre-requisite to the erection of the new depot on the old site—and that this consent was given afterwards ; and it is not to be forgotten that, so far as disclosed by the record before us, the property-holders on South Madison street have never given their assent to the closing of that street.

In this attitude of the matter, the chancery court of Warren heard much testimony on both sides of the question, and found, as matter of fact, that the Cherry street site was not inconvenient and inaccessible, due regard being had to the interests of the railway company and of the public, and this finding we do not feel authorized to disturb.    While much evidence was offered for appellant, the preponderance of the proofs on this controlling point in the case, as it appears to us, is with the appellee.    The reasons for making the proposed change of site, and for a separation of the freight and passenger business, are great and apparent.    That the interests of the railway company, and the interests of the business world having relations with the freight department of the railway will be promoted by the change of site seems clear also.    Possible hurt may accrue to traders and others on Washington street, near the old depot, and inconvenience to the local travelling public going into Vicksburg, but not beyond, may result from the change, but to the extent only that Cherry street is farther from the business centre of the city, by a few blocks, than the old site.

The record fails to show, in a large and general and correct sense, that Cherry street crossing is inconvenient or inaccessible, regard being had to the interests of the railway company and the public, and the demonstration of this great fact was the burden assumed by appellant in this controversy.

In this view of the case, it becomes wholly unnecessary to consider the many other questions sought to be pressed upon us for determination.                                                  *Affirmed.*