STATE OF MISSISSIPPI EX REL., ETC., v. YAZOO & MISSISSIPPI
VALLEY RAILROAD COMPANY.

[40 South. Rep., 263.]

RAILROADS. *Establishment of depots. Railroad commission.* Code 1892,
§ § 4302, 4309, 4311. *Laws* 1890, *ch.* 88, *sec.* 4, *p.* 107.

The railroad commission is not empowered to require a railroad com-
pany to maintain detached freight and passenger depots in the
same municipality; such power cannot be deduced from Code 1892,
§ § 4302, 4309, 4311, nor from Laws 1890, ch. 88, sec. 4, p. 107, relat-
ing to railroad depots.

FROM the circuit court of Holmes county.

HON. A. McC. KIMBROUGH, Judge.

The state, suing upon relation of William Williams, attorney-
general, the appellant, was plaintiff in the court below; the
railroad company, the appellee, was defendant there. The suit
was a mandamus proceeding to compel defendant to erect and
maintain a depot. From a judgment denying the writ and
dismissing the suit the plaintiff appealed to the supreme court.
The facts are stated in the opinion of the court.

*Noel, Pepper & Elmore,* for appellant.

That the legislature has authority, directly or through a com-
mission, to require the erection of necessary depots, is so well
settled that we cite but two cases: *Northern Pac. R. R. Co.* v.
*Territory of Washington,* 142 U. S., 492 (35 L. ed., 1092);
*State* v. *A. & V. Ry. Co.,* 67 Miss., 647 (s.c., 7 South. Rep.,
502).

The legislature could have conferred upon the railroad com-
mission, directly or by implication, the power to require the erec-
tion of depots. Code 1892, § 4309, directly confers upon the
commission that power in cases where the site selected by the rail-
road officials is inconvenient or inaccessible, etc. This provision

is very similar to one contained in Laws 1888, sec. 2, p. 35. That law, when a new depot was ordered, required the commission to provide plans and specifications therefor, but not so with the present law, which authorizes the commission to require the railroads to submit plans and specifications of depots ordered to be erected. Under Laws 1888, the authority of the commission to require the erection of a new depot in the place of an old one, when proper procedure was taken, was sustained by this court. *State* v. *A. & V. Ry. Co., supra.*

Code 1892, § 4302, declares: "Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience," etc. As alleged in the petition and admitted by the demurrer, this section was never complied with, either by appellee or the West & East Railroad Company, to whose rights it succeeded. As population and business increase, the inconvenience and injury constantly grow. Having never performed its duty to the public, required by plain statute, mandamus is the proper proceeding for the enforcement of such duty.

Authority to require railroads to provide sufficient depot facilities where they are insufficient—as is admitted is the case here—is also conferred by sec. 4311 of the code. This power was exercised in the manner provided. Under sec. 4284 of the code this determination shall be received in all courts and by every officer in civil cases as *prima facie* evidence that it was right and proper.

*Mayes & Longstreet,* for appellee.

The court will observe that the order in this case was made by the railroad commission under the authority supposed to be conferred by Code 1892, § 4309, which is as follows:

"Section 4309. *Location of station houses.*—The commission may designate the site or location of any new building or station house which may be ordered erected in cases where the site selected by the railroad officials is inconvenient or inaccessible;

but every depot must be located with due regard to the interest of the railroad and the public convenience.".

The very language of this section is used in expressing the terms of the order, and the order rests on the idea that the railroad commission possesses power and authority to order the removal of depot buildings, from locations which are supposed to be inconvenient and inaccessible, to locations convenient and accessible, in the judgment of the commission. But it will be apparent to the court at a glance that sec. 4309 was not designed to confer upon the railroad commission such authority. It was never intended that the railroad commission should order depots removed from one spot to another, simply on account of the alleged inconvenience of the existing depots.

The section referred to contemplates a case where a new depot is to be established, where no depot theretofore existed, and in such case, if the site selected by the railroad company is inaccessible and inconvenient, in the judgment of the commission, then, under sec. 4309, the commission may direct a change of location from the one selected by the railroad officials to another, convenient and accessible, if such a change can be made without great injury to the railroad's interests.

In its very terms, however, the statute emphasizes the idea that mere inconvenience and inaccessibility will not warrant a change from the site selected by the railroad officials if the change will work any considerable injury to the railroad company; but the statute also shows on its face that it was intended to apply only when the question of the establishment and building of a new depot, originally, is determined on.

The court will please bear in mind in this connection that the Yazoo & Mississippi Valley Railroad Company had not at any time determined on building a new depot at Lexington, nor had that company contemplated the abandonment or disuse of its existing depot; the officials of the company had not selected any

other site, nor had they determined on any change whatever in existing arrangements.

Depots are not moved at the mere whim or caprice of the members of a community, nor does a mere showing that a new depot at some point in a municipality would be more convenient and accessible than at the point where the depot is maintained warrant an order for a change of the depot from one site to another. There is no such authority found in the whole chapter on the supervision of carriers nor under the general law.

It often occurs that a depot established at the most convenient and accessible point in the early history of the town becomes somewhat inconvenient and inaccessible in the course of the development and growth of the town and the shifting of the center of business one way or the other; but even though there be some inconvenience incident to the travel to the station under such circumstances, still, this mere inconvenience and apparent inaccessibility will not justify an extraordinary exercise of power by the railroad commission to compel the abandonment of the existing depot and the erection of a depot at a different point.

We beg to call the attention of the court to the case, in our own books, of *State* v. *A. & V. Ry. Co.,* 68 Miss., 653. While the facts of the case adjudicated are not identical with the facts here, nor the statutes the same in terms, there is a close similarity between them. In that case the court holds that the railroad commission is not vested with arbitrary power in cases of this sort, and that it is necessary not only that the jurisdictional facts should appear, but that it shall also be made patent that the railroad company's rights are not violated by the order.

It appears from this record that there is now a stopping point at Wilson's crossing, and that there is a platform there for the accommodation of passengers who embark and disembark at that point. This stopping place was made by a special act of the legislature of Mississippi under the section of the code referred to, which provides that there may be stopping places in addition

to the regular depot.    It was, however, to begin with, an arbitrary exercise of power, but was not questioned by the railroad company, because of its willingness to accommodate itself to the wishes of its patrons.

However, the act referred to, and which has been cited in the brief of counsel, itself provides just what shall be done at Wilson's crossing.    That act did not require the erection of a passenger depot or station building there.

CALHOON, J., delivered the opinion of the court.

This is a petition for mandamus to require the railroad company to erect a passenger depot within four hundred feet of Wilson's crossing, in the town of Lexington, Miss., on its right of way.    The averments are that the appellee operates a railroad from Tchula, Miss., to Durant, Miss., through Lexington; that its operation of so much of said railroad as extends eastwardly from Lexington to Durant has been from 1886 under a lease from another railroad company, the West & East Railroad Company, which had before then built it and erected a passenger and freight depot in the town, which has ever since been used by appellee; that in March, 1904, the state railroad commission, on proper petition, with appellee notified and represented, ordered appellee to establish a passenger depot within four hundred feet of Wilson's crossing in the town, north of its track; that no attention has been paid to the order, but the original depot is used, which is, and always was, inconvenient and inaccessible to the people and business, and never such as was reasonably necessary for public convenience, whereas one built and used at Wilson's crossing, or near it, would be; that the old depot is about three-quarters of a mile distant from the business and residence part of Lexington, separated from it by two high hills and a creek, and in an almost uninhabited part of the town; and that appellee has been fined five hundred dollars by the state railroad commission for refusing to obey its order.    There is a

demurrer to the petition, on the grounds, first, that it is insufficient in law; second, that it does not show facts conferring authority on the commission to make the order; third, that it shows that there was an established depot, and does not show its insufficiency for the wants of the town; fourth, that the order requires a new depot without warrant of law; fifth, because the law does not authorize an order for the establishment and maintenance of two distinct depots in the town; sixth, because the findings of the commission do not warrant the order for a new depot; and, seventh, because the railroad company had not proposed to build a new depot nor selected a site for it. The order is made an exhibit to the petition. The court below sustained the demurrer and dismissed the petition, and the state appeals. The questions involved require construction of Code 1892, § § 4302, 4309.

Section 4302 is as follows: "Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of its passenger and freight trains at any depot as the business and public convenience shall require; and the commission may cause all passenger trains to permit passengers to get on and off in 'a city at any place other than at the depot where it is for the convenience of the traveling public. And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission."

Section 4309 is as follows: "The commission may designate the site or location of any new building or station house which may be ordered erected in cases where the site selected by the railroad officials is inconvenient or inaccessible; but every depot must be located with due regard to the interest of the railroad and the public convenience."

In order to throw what light there may be derived from other legislative enactments on the grave question here presented, we

reproduce Code 1892, § 4311, as follows: "The commission may require every railroad to provide sufficient depot, storage, and platform facilities, and shall hear all complaints that may be presented, in writing, as to insufficient depot, storage, or platform facilities for freight, and shall make such order thereon to secure the same as the facts and the public convenience may warrant."

We also reproduce Laws 1890, ch. 88, sec. 4, p. 107, as follows: "Every railroad company shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of the passenger and freight trains at any depot as the business and public convenience shall require; and it shall be unlawful for any such company to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop trains thereat, without the consent of the railroad commission. The railroad commission shall have authority to cause to be instituted and prosecuted all proper legal proceedings by mandamus or otherwise to enforce the provisions of this act."

Interpreting this clause, this court, in *State* v. *A. & V. Ry. Co.,* 68 Miss., 653 (9 South. Rep., 469), lays stress on the importance of having regard to the interest of the railroad companies as well as of the public, carefully guarding against a construction violative of the rights of such corporations. These rights must, of course, have due consideration in determining the object and effect of the order of the railroad commission in the case now before us. The courts must, by express legislative provision in the concluding clause of Code 1892, § 4309, above, give consideration to the rights of railroad companies. That clause of the section which relates to the construction of new station houses is: "But every depot must be located with due regard to the interest of the railroad and the public convenience." The order of the railroad commission in the case in hand, after directing the building of a "passenger depot," which

is required to be "within four hundred feet of Wilson's crossing" and on the north side of the track, proceeds to say: "That said railroad be authorized to cease stopping its trains at the present depot, except so far as may be required for freight."    So very plainly the appellee is ordered to maintain in the town of Lexington two depots, for which order we find no warrant in any part or section of the law—which, being in derogation of right, must receive a strict construction.    It is to be observed that the order of the commission requires the new depot to be, not only "within four hundred feet of Wilson's crossing," but also "on the north side of its main line."    It is not shown that the company has property there, nor even that it could procure it on condemnation at reasonable rates, especially as the precise point, practically, is determined on.    We can well suppose, also, that condemnation proceedings would be resisted on the very ground that the company had a depot which the law itself makes it unlawful to disuse without the consent of the commission.    Sec. 4302, *supra.*    Thus, if the consent be withheld, the old depot must be maintained, and with the clear implication that any number of depots might be ordered in any little town to suit the changing convenience of a shifting population, giving a right not dreamed of in large cities.    We are referred to no case warranting such contention, though many may be found—and on common-law principles—requiring depots for towns where no such structures had ever been erected.    Once erected and in operation, especially, as in this case, for so many years, we do not think the law designed to give the power to order new depots to suit varying convenience.    There is now a stop station by former enactment for passengers to get on and off the trains at Wilson's crossing.    We cannot see that the order has "due regard to the interest of the railroad and the public convenience," which might require an enormous outlay of money to substitute a regular depot for the stop station.

It seems that a railroad must provide depots for towns.· A

depot was provided for Lexington many years ago.    The precise question here is, Conceding, but not deciding, that the legislature had the power, did it confer it on the commission, under sec. 4309—when there was already a freight and passenger depot provided and built, though not convenient, and when the company had not determined to construct a new one, and had not selected a site for one—to order a new depot built for passengers at a point fixed by the commission within a half radius of four hundred feet, on a specific side of its track, regardless of the ownership of property for it or the expense attached?    We think not, and can find no case so intimating.    We refer to the reasoning of the court in both the majority and dissenting opinions in *Northern Pac. R. R. Co.* v. *Territory of Washington,* 142 U. S., 492 (12 Sup. Ct., 283; 35 L. ed., 1092).    If the purpose was to confer this power, may not a new freight depot be ordered next year, and a change of the location of both depots the year after?    Such tyranny was never contemplated.    A passenger station was already in operation at Wilson's crossing, put there without objection, though the law very properly requires such stops only in cities.    Every depot in every city is inconvenient to residents remote from it, but it does not follow that railroad companies are required to have depots to suit sectional convenience.    Section 4309 in its terms involves the idea of a previous designation by the company of a site for a new building, which the commission may not approve, in which event it may, itself, "with due regard to the interest of the railroad and the public convenience," designate the site.    In any view, it does not appear that the commission should take charge of the purse of the company and shift depots from place to place.    The statutes, as we think, have reference to the original establishment of depots, to the location of new ones desired by the company, and to making those already established sufficient in accommodation and necessary facilities.    The other view would make new structures demandable at the caprice of municipal populations

and open a wide door to the suggestions of speculation. If it be the right view, it is curious to surmise what number of depots, freight and passenger, will be clamored for when we have a city as large as Chicago.

Judge TRULY concurs in the conclusion of affirmance, but on the specific ground that the order of the railroad commission requires the maintenance of two separate, detached depots—one for freight and the other for passengers. This he thinks *ultra vires*. On the power to order a new depot in a town, when one is already built and in operation, and to designate its location, he thinks it unnecessary now, to give a decision, and intimates no opinion either way. Personally, I have seen fit as a judge to express my views. Corporations are entitled to some protection under the laws, if our laws are to be just and equitable. If any number of depots may be ordered by the commission to suit populations as they may be centered in cities and towns, how many should be in New York or Chicago, with two or three millions of people and with miles of business centers? It is no answer to say these matters will be under the revisal and care of the courts. They are under this now. I have yet to hear of the courts abolishing a power clearly given by the people. If the claim of Lexington in this case be allowed under the supervision of the courts, any claim must be, and railroad companies might be bankrupted. In my judgment, the opinion of Chief Justice WHITFIELD in dissent does not show a correct conception of the order of the railroad commission or of the authorities it cites. To avoid elaboration, I merely call attention to the order as promulgated, and to the authorities produced, and to the current history of the whole United States, and to the suggestions of practical common sense.        *Affirmed.*

WHITFIELD, C. J., delivered the following dissenting opinion:
The petition in this case alleges, and the demurrer admits, that the old depot "for freight and passengers which had pre-

viously been built by the West & East Railroad Company, at the outer verge of the town of Lexington, is, and always has been, inconvenient and inaccessible to the inhabitants and business people of the town of Lexington and those who use defendant's railroad to go to and come from Lexington, and was never such' a depot as was reasonably necessary for public convenience," and that the site of the proposed new depot is convenient and accessible, etc. The demurrer admits these facts, and the con-- tention really comes to this: First, that in a town having the population fixed by our statutes the railroad commission is with- out power to establish two depots where the depots are both for freight and passenger traffic; and, second, that the railroad commission is without power to establish any new · passenger depot while at the same time permitting the railroad company to have its freight depot where the passenger depot is or to use its old passenger depot for freight purposes. The order of the railroad commission is as follows:

"Be it remembered that this day there came on to be heard the application of the citizens and of the town council of Lexington, Miss., for the establishment of a depot at or near Wilson's cross- ing, on the line of the Yazoo & Mississippi Valley Railroad Company, in said town; and it appearing that said application had been heard at a previous meeting of the Mississippi railroad commission, and that after hearing evidence and argument said application had been sustained, and the passenger depot ordered to be erected by said railroad company on its line at Wilson's crossing; and it further appearing that said order had been suspended by a subsequent order entered by this board, and after said suspension all of the members of this commission, on May 3, 1905, went to Lexington, Miss., and in the presence of the representatives of the said railroad company, and of the petition- ers, examined the present depot at Lexington and its surround- ings, and the site of the proposed new depot and its surroundings, and all circumstances relating to the respective advantages and

disadvantages of the two sites; and having heard evidence from each side and arguments from each, presenting their respective views of the matter in controversy, and having since duly considered the same, and being of opinion that the inconvenience and inaccessibility of the present passenger depot, as compared with the proposed new site, requires, with due regard to the interest of said railroad company and the public convenience, that a passenger depot should be built at Wilson's crossing, in said town of Lexington, Miss.—it is, therefore, ordered and adjudged that the Yazoo & Mississippi Valley Railroad Company be, and it is hereby, required and ordered to locate and establish and build a passenger depot on the north side of its main line in the town of Lexington and within four hundred feet of Wilson's crossing, and that said depot be of fair size, with separate apartments of sufficient size for the two races, and with ticket office and room for baggage, and that plans and specifications for said depot be submitted at the next meeting of this board, and that said building be completed and in operation on or before the first day of September, 1904, and that, whenever depot facilities are afforded at the new depot herein ordered, said railroad company be authorized to cease stopping its trains at the present depot, except so far as may be required for freight."

As I understand this order, it establishes a new passenger depot, because the old one is inconvenient and inaccessible and does not meet the requirements of the public, but merely permits or authorizes the railroad company to continue to use the old depot for freight if it chooses.   Code 1892, § § 4302, 4309, 4311, provides as follows:

"Section 4302.   Every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of its passenger and freight trains at any depot as the business and public convenience shall require; and the commission may cause all passenger trains to

permit passengers to get on and off in a city at any place other than at the depot where it is for the convenience of the traveling public.    And it shall be unlawful for any railroad to abolish or disuse any depot when once established, or to fail to keep up the same and to regularly stop the trains thereat, without the consent of the commission. . . .

"Section 4309.    The commission may designate the site or location of any new building or station house which may be ordered erected in cases where the site selected by the railroad officials is inconvenient or inaccessible; but every depot must be located with due regard to the interest of the railroad and the public convenience. . . .

"Section 4311.    The commission may require every railroad to provide sufficient depot, storage, and platform facilities, and shall hear all complaints that may be presented, in writing, as to insufficient depot, storage, or platform facilities for freight, and shall make such order thereon to secure the same as the facts and the public convenience may warrant."

(1) I do not think that any fair construction of these sections will result in holding that the commission cannot order a new passenger depot in a town, even, unless the old one has first been destroyed or abandoned and the railroad company has itself selected a site for a new one.    I believe that in cities the railroad commission has power to require just as many depots constructed as the interest of the public may require.    (3) Whether the railroad commission has the power, in a town, to compel the construction of a second, new depot for passengers, the old one being abandoned for passenger traffic, and at the same time require the railroad company to maintain a freight depot apart from the new passenger depot, is not necessary, in my judgment, to be decided at this time on this case.    I interpret this order as simply commanding the erection of a new passenger depot.    I do not understand it to command the railroad company to keep up the freight depot apart from the new passenger depot, but as

simply authorizing—that is, permitting—the railroad company to use the old passenger depot for freight purposes if the railroad company so chooses. It was a very simple matter for the railroad company to build a freight depot together with the passenger depot, if it had seen fit to do so; and from the language of the order, I think that the commission wisely avoided any command to the railroad company to maintain the freight depot at its old place while constructing a new passenger depot. In short, so far as the freight depot is concerned, the commission left the company to keep it where it was or to build it with the new passenger depot as it chose. This, to my mind, is the plain meaning of the order. Our own cases—*State* v. *A. & V. Ry. Co.,* 67 Miss., 647 (7 South. Rep., 502); *State* v. *A. & V. Ry. Co.,* 68 Miss., 653 (9 South. Rep., 469)—expressly hold, as I understand them, that the railroad commission has the power to establish a new depot where the public business requires it. The latter case deals expressly with the power of establishing a new passenger depot. But the court stated what seems to me obvious, in 68 Miss., 659 (9 South. Rep., 470)—that the reasons for making the proposed change of site and for a separation of the freight and passenger business are great and apparent. It seems to me that these reasons would be great and apparent in a multitude of instances that may be conceived in cities; and why may not the same reasons exist to authorize the commission to separate the freight and passenger business, even in a town where all that the commission does is to establish one passenger depot? But, as stated, the commission has not even required this separation in this case. It has merely established a new passenger depot and permitted the company, as to its freight depot, either to add that to the new passenger depot or retain it where it is, at its pleasure. The case in 67 Miss. (7 South. Rep.) squarely decides that, even at a place like Lake station—not even a town, according to the statutory definition of a town, at that time—the railroad commission might, under the act of

March 14, 1888, and the act of March 11, 1884, the former practically the same as the present statute, require a new freight and passenger depot erected at a little place like Lake station. It seems to me that these authorities are conclusive of the power of the commission to at least erect a new passenger depot and leave the railroad company to add a freight depot to the new passenger depot or retain the old freight depot, at its pleasure; and that, it seems to me, is all that this order of the commission does.

I think the power of the commission ought not to be unduly abridged. Great pains seem to have been taken in this case to act with discretion. The railroad commission actually went to Lexington and carefully examined the local situation, besides hearing full evidence. Its judgment is presumptively correct, and the discretion lodged in it is necessarily very large, from the very nature of the duties it has to perform. Regard must be had, in the matter of establishing freight depots and passenger depots, to both the public interest and the interest of the railroad company; but usually the number of depots, whether freight or passenger, and the separation of passenger depots from freight depots, are matters which must be left to the sound discretion of the railroad commission, acting upon full evidence and having in view the needs and demands of the rapidly-increasing population of towns and cities and the large development of the various business interests located therein. It is said that the provision that in cities there may be more stopping places than one indicates that there may not be more than one passenger depot in a town. Conceding, for the sake of the argument, the soundness of this view, I do not think it touches the present case, in my view of what the order of the commission means. I will refer, also, to authorities supporting my view generally. See the cases cited by the learned counsel for appellee—to wit, *Hunt* v. *Chicago, etc.,* 130 Ill., 175 (22 N. E. Rep., 857); *State* v. *Railroad Co.* (Neb.), 24 N. W. Rep., 329 (52 Am. St. Rep., 424);

*Railroad Commissioners* v. *Portland & O. C. R. Co.* (Me.), 18 Am. St. Rep., 208; *Northern Pac. R. R. Co.* v. *Territory of Washington,* 142 U. S., 492 (12 Sup. Ct., 283; 35 L. ed., 1092) —the last case being cited by the learned counsel for the appellant.