ILLINOIS CENT. R. Co. *et al.* v. MISSISSIPPI R. COMMISSION *et al.**

(Division A. Nov. 1, 1926.)

[109 So. 868. No. 25893.]

1. PUBLIC SERVICE COMMISSIONS. *Certiorari will not lie to review order of railroad commission fixing intrastate freight rates (Hemingway's Code, sections 72, 73, 7627, 7634).*

   Under Hemingway's Code, sections 72, 73 (Code 1906, sections 90, 91), *certiorari* will not lie to review order of railroad commission fixing intrastate freight rates under authority of sections 7627, 7634 (Code 1906, sections 4842, 4849); determination of such rates being a legislative and not a judicial function.

2. PUBLIC SERVICE COMMISSIONS.
   State railroad commission has no implied power.

*Corpus Juris-Cyc References: Carriers, 10CJ, p. 54, n. 13, 20; p. 410, n. 40, 42; *Certiorari,* 11CJ, p. 123, n. 89; p. 125, n. 47 New.

APPEAL from circuit court of First district, Hinds county.

HON. W. H. POTTER, Judge.

*Certiorari* by the Illinois Central Railroad Company and others against the Mississippi Railroad Commission, wherein the Alabama & Vicksburg Railway Company was permitted to become a party plaintiff, and representatives of the Mississippi Cottonseed Crushers' Association and others intervened, defending validity of the order of respondent Railroad Commission. From

a judgment dismissing the petition and affirming the order, petitioners appeal, with *supersedeas.*    Affirmed.

*Chas. N. Burch, H. D. Minor, C. H. McKay, R. V. Fletcher, May, Sanders & McLaurin, J. Carter Fort, R. H.* and *J. H. Thompson,* for appellants.

I.    Appellants were confronted *in limine* in the circuit court and likewise in this court with one of the grounds of the motion to quash to the effect that "the action of the commission in said matter and the determination and order therein complained of were legislative and administrative in their nature and character, and the actions of the commission therein were the exercise of a legislative and administrative function, which is not reviewable by *certiorari.*"

It is the contention of appellants that the order of the commission is plainly divisible in two parts.    The first portion of the order; that is, that portion finding that the then existing rates were unreasonable, is the judicial ascertainment of a then existing fact.    In ascertaining a then existing fact the commission was exercising a judicial or *quasi*-judicial function.

The remaining portion of the order fixing rates for the future was a legislative act.    We concede that under the decisions of this court a purely legislative or administrative order of the commission cannot ordinarily be reviewed by *certiorari,* though, as we shall hereafter show, this rule is not without some limitations and exceptions.    *G. & S. I. R. R. Co.* v. *Adams,* 85 Miss. 772; *Cumberland Tel. Co.* v. *State, ex rel.,* 135 Miss. 835; *Board of Supervisors* v. *Melton,* 123 Miss. 615.

II.    The Mississippi Railroad Commission exercises both judicial or *quasi*-judicial functions and also legislative or *quasi*-legislative functions.    A plain illustration of the exercise of judicial functions by the commission is found in the case of *R. R. Co.* v. *Adams,* 85 Miss. 772,

in the exercise by the commission of its duty to classify the railroads for the purpose of privilege taxation.

An illustration of the exercise of a legislative function by the commission is found in *Cumberland Tel. Co., etc.*, v. *State*, 135 Miss. 835. In that case it appeared that the Telephone Company had petitioned the commission for an increase in rates. The railroad commission granted the application and made *an order fixing a schedule of rates for future observance. That was the only order sought to be reviewed by certiorari.* There was no order under review adjudging existing rates unreasonable.

Another illustration of the Mississippi rule that purely administrative or legislative acts cannot ordinarily be reviewed by *certiorari* is found in *Board of Supervisors* v. *Melton*, 123 Miss. 615, wherein was involved an administrative order of a board of supervisors.

III. While the Constitution of Mississippi provides for three departments of government, executive, legislative and judicial, and prohibits any one department from exercising the powers of another, yet these provisions of the Constitution do not apply to such inferior tribunals as boards of supervisors or the railroad commission. *Ex parte Fritz*, 86 Miss. 221.

IV. Findings of Mississippi Railroad Commission are not final but subject to judicial review. *Telegraph Co.* v. *R. R. Commission*, 74 Miss. 92.

V. We are here reviewing a judicial act of the commission. The commission may in the same order exercise judicial and legislative functions. *Interstate Commerce Commission* v. *C. N. O. & T. P. Ry. Co.*, 167 U. S. 497. An examination of the annotations of this case in Rose's Notes of the United States Supreme Court Decisions will disclose that the above statement of the law has been followed in practically all of the state courts. The above statement of the law is entirely in ac-

cord with the Mississippi cases above referred to. *R. R. Co.* v. *Adams,* 85 Miss. 795.

VI.   Mississippi decisions definitely determine that the Mississippi Railroad Commission exercises both legislative and judicial functions.   Decisions to the contrary by other courts are, therefore, not in point. *L. & N. R. R. Co.* v. *Garrett,* 231 U. S. 228, is not in point here for two reasons:   (1)   Because the supreme court of Mississippi has definitely determined that the Mississippi Railroad Commission exercises both judicial and legislative functions, as illustrated in *R. R. Co.* v. *Adams,* 85 Miss. 772, and *Cumberland Tel. Co.* v. *State, ex rel.,* 135 Miss. 835; (2) In the United States supreme court case just referred to, that court was asked to declare unconstitutional an act of the Kentucky legislature which defined the powers of the Kentucky Railroad Commission.   The contention was made that the act of the Kentucky legislature conferred both legislative and judicial powers upon the Kentucky Commission and, therefore, the act was void as being in conflict with the Kentucky Constitution.   In the approach to the decision of this question, the United States supreme court expressed, as it always does, its reluctance to decide that a state statute is in conflict with a state Constitution before the validity of that statute has been passed upon by the highest court of the state.   In short, the United States supreme court always avoids such a question if it can possibly be avoided, leaving the decision to the highest court of the state, where it properly belongs.   It was under such circumstances that the United States supreme court was asked to declare unconstitutional the aforesaid act of Kentucky and it was under such circumstances that it stated that the "nature of the final act" (fixing rates for the future) determines "the nature of the previous inquiry."

VII.   For sections of code relative to *certiorari* see, sections 72-73, Hemingway's Code (sections 90-91, Code of 1906).

VIII.   For sections of code stating power of commission as to fixing rates, see sections 7634 and 7627, Hemingway's Code.

IX.   The commission has no implied powers.   *G. & S. I. R. R. Co.* v. *R. R. Commission,* 94 Miss. 134.

X.   The commission acted erroneously in not following principles prescribed by statute.   The public interest, which is the prime consideration, was not considered.

The problem of the commission in determining whether rates are reasonable is to be solved on these principles:   (1)   The nature and kind of the service, the entire business of the carrier and its earnings;   (2)   justice to the public and the railroad and other common carriers; and   (3)   that the commission shall keep its hands off of interstate rates.   In the instant case it is our insistence that the record on its face shows that the commission did not follow these principles.

XI.   Long maintenance of rates is an admission of reasonableness.   *Green Bay Business Men's Ass'n* v. *B. & O. R. R. Co.,* 15 I. C. C. 63.

XII.   Rate comparisons have no probative effect without full disclosure of all facts and circumstances.   *Raymond* v. *C. M. & St. P. Ry. Co.,* 1 I. C. Rep. 231; *South Canon Coal Co.* v. *C. & S. Ry. Co.,* 17 I. C. C. 286; *I. C. R. R. Co.* v. *R. R. Commission,* 1 Fed. (2) 805.

XIII.   The order is void as regulating interstate commerce.   *L. & N. R. R. Co.* v. *Eubanks,* 184 U. S. 27; *R. R. Commission* v. *C. B. & Q. R. R. Co.,* 257 U. S. 563; *Houston E. & W. T. R. R. Co.* v. *U. S.,* 234 U. S. 342; *N. C. & St. L. Ry.* v. *State of Tenn.,* 262 U. S. 318.

XIV.   How courts test validity of commission orders: *G. & S. I. R. R. Co.* v. *Adams,* 85 Miss. 772; *Interstate Commerce Com.* v. *U. P. R. R. Co.,* 222 U. S. 547; *P. & R. R. Co.* v. *Interstate Com. Com.,* 240 U. S. 334; *Sea-*

*board A. L. R. Co.* v. *U. S.,* 254 U. S. 57; *Florida East Coast R. R. Co.* v. *U. S.,* 234 U. S. 185.

*F. H.* and *F. J. Lotterhos,* for appellees.

I.    Rate making is legislative and not subject to *certiorari. Cumberland Tel. & Tel. Co.* v. *State,* 135 Miss. 835, 100 So. 378, covers this case squarely and is fortified by ·the authorities therein cited, among which are the notables one of *I. C. R. R. Co.* v. *Dodd,* 105. Miss. 23, 61 So. 743; *Board of Supervisors* v. *Melton,* 123 Miss. 615, 86 So. 369; *Prentiss* v. *Atlantic Coast Line Ry. Co.,* 211 U. S. 210, 53 L. Ed. 151; *L. & N. R. R. Co.* v. *Garrett,* 231 U. S. 298, 58 L. Ed. 229. See, also, 4 R. C. L., p. 608.

II.    The investigation upon which rates are made is not judicial, but is treated as submerged in the making of the rate for the future.    Much is said in appellant's brief about the Mississippi Railroad Commission having legislative and judicial functions.    The legislature has committed to this commission more duties and powers than those incident to rate making alone; and, while *certiorari* may run to a proceeding in which ·some judicial function is exercised, it is not applicable to one definitely decided by this court to be legislative.    This appears from the decision of this court in *R. R. Co.* v. *Adams,* 85 Miss. 795.    The soundness of this principle cannot be more clearly stated than appears from 4 R. C. L., p. 623.

The supreme court of the United States holds that a legislature or a railroad commission in exercising its delegated power in rate making may require a hearing, the consideration of relevant statutes, evidence, and arguments, and determine whether existing rates are excessive; and that upon these conditions being fulfilled, the questions of fact which might arise as to the reasonableness of existing rates in the consideration preliminary to legislative action would not become as such judicial questions to be re-examined by the courts.    *L. & N. R.*

*R. Co.* v. *Garrett,* 231 U. S. 298, L. Ed. 229. With all due respect for the very able brief submitted by appellants, we are unable to see the cogency of the effort to distinguish the Garrett case.

III. The commission proceeded according to the statute and reached a determination and the courts cannot review the evidence and substitute their judgment of what would be a proper rate. Section 7621, Hemingway's Code. See, also, *Interstate Commerce Commission* v. *Union Pac. Ry. Co.,* 222 U. S. 541, 56 L. Ed. 308.

IV. The relation of the intrastate rates before the court to interstate rates, or the effect of interstate commerce, is not an influential consideration in this proceeding.

The Mississippi Commission is created to make rates applicable within the state, and it has gone no farther than that in this case. It is argued that the level of these rates is detrimental to points in other states having shipments of cottonseed from Mississippi to foreign destinations. The Interstate Commerce clause of the Federal Constitution and acts of Congress thereunder are sufficient to protect interstate commerce in proceedings appropriate to that end; and we submit that this proceeding is not one such. Congress has provided for action by the Interstate Commerce Commission to protect interstate commerce and those engaged in it, notwithstanding conflicting rates made by state authority for intrastate service. (Interstate Commerce Act as amended by Transportation Act of 1920). The state authorities prescribe what is deemed to be a proper charge for service within the state; and Congress in the exercise of its permitted powers over interstate commerce has made enactment whereby the Interstate Commerce Commission may investigate the relation between interstate rates and intrastate rates; and, where that commission finds that the intrastate rates have a deleterious effect on

interstate commerce or those engaged therein, it may make an order protecting interstate commerce.

Every variation between intrastate rates and interstate rates is not treated as unduly burdensome to interstate commerce, and in its desire to properly harmonize Congress has committed the exercise of the federal power to act when Congress will to the Interstate Commerce Commission; and the intrastate rates have ample validity until the Interstate Commerce Commission may find them inimical to interstate commerce, and make a proper correction in the circumstances, insofar as interstate carriers may be concerned. It is not for the courts of the state to assume the exercise of the federal authority to preserve balance between the intrastate and interstate rates, but this function is left to the federal authority created by Congress under its power to regulate interstate commerce. If the rate fixed by the state should infringe upon the constitutional guaranties belonging to the carriers, injunctive relief may give protection. However, this record does not present such a case; nor could the relief be had by process of *certiorari.*

It is argued that the rates made by the Mississippi commission give advantage to shippers in Mississippi over those in other states desiring to ship cottonseed out of Mississippi. It will be observed from the record before the Mississippi commission that a showing was made to the effect that the carriers maintained interstate rates from points in Mississippi to points in other states disadvantageous to Mississippi shippers. It is a matter of common knowledge that cottonseed is practically the only agricultural product produced in the state of which the greater part is converted into finished products by manufactories within the state. If the Mississippi commission found the carriers maintaining rates serving to induce the movement of the raw material away from the state of its production for manufacture in other states, would it not be the duty of the Mississippi commission to so adjust the intrastate rates as to permit the con-

Sept., 1926] Ill. Cent. R. R. Co. v. Miss. R. R. Com. 813

143 Miss.] Opinion of the Court.

tinued substantial manufacture of cottonseed products within the state? Or at least would the commission not be justified in taking such action?

A freight rate for future application made by the Mississippi Railroad Commission may not be reviewed by *certiorari*.

Argued orally by *Chas. N. Burch,* for appellant, and *F. H. & F. J. Lotterhos,* for appellees.

McGowen, J., delivered the opinion of the court.

The Mississippi Cottonseed Crushers' Association filed a complaint before the Mississippi Railroad Commission against all the railroads in the state, charging that the freight rates on cottonseed on intrastate shipments were unreasonable; and the Jackson Traffic Bureau filed a complaint also to the same effect.

Thereupon the railroads were cited to appear and show cause why the rates should not be revised and reduced as to cottonseed in carload lots on intrastate shipments. In due season the railroad commission heard proof, and after considering it at its December, 1925, meeting, the commission made an order fixing the rates in detail, greatly reducing the rates from the rates which had been in force for many years prior to the makir of this order. Thereupon the Illinois Central Railrc Company and the Yazoo & Mississippi Valley Rail Company presented their petition to the circuit of Hinds county praying for a writ of *certiorari* ing that the Mississippi Railroad Commission b fore the circuit court of Hinds county the rec proceedings in this matter of freight rates.

The appellant, Alabama & Vicksburg Ra pany, adopted the petition thus presented, mitted by the court to become a party in th writ of *certiorari* operating as a *supersede* by the circuit court. Upon the execution

the record in its entirety was brought up to the circuit court. Thereupon the representatives of the Mississippi Cotton Crushers' Association, Jackson Traffic Bureau, and Mississippi Farm Bureau Federation petitioned the court for leave to intervene on the motions to quash the writ of *certiorari*, and *supersedeas*, in defending the validity of the order of the Mississippi Railroad Commission, which leave was granted.

The commission and the above-named interveners then moved the court to quash and dismiss the writ of *certiorari* and *supersedeas*, alleging eight causes for quashing the writ of *certiorari*, but we shall quote the fifth as embracing the question here presented to this court, which is as follows:

"(5) The action of the commission in said matter and the determination and order therein complained of were legislative in their nature and character, and the actions of the commission therein were the exercise of a legislative function, which is not reviewable by *certiorari*."

The circuit court, having the entire record before it, quashed and set aside the writ of *certiorari* and *supersedeas*, dismissed the petition for the writ, and affirmed the order of the railroad commission; and the railroad companies, who petitioned for the writ, were granted an appeal to this court with *supersedeas*.

The counsel for the several railroad companies insist here as their main contention in this case that the whole proceeding before the railroad commission was a judicial proceeding because it was a proceeding which, in effect, declared unreasonable the rates on cottonseed which had been in existence for many years in the state, on the theory that the proceeding before the railroad commission was a judicial one because necessarily it was determined that the rates hitherto charged were unreasonable, and that because in the exercise of its legislative function it called into play judicial acts, that therefore the case is reviewable by the courts of the land.

It might be well to add this statement, that the Mississippi Railroad Commission seems to have gone into the question of the rate to be established very fully. The record before us discloses that many pages of testimony were taken, fifteen or sixteen witnesses were examined, and the commission appears to have proceeded with due deliberation. But however that may be, the circuit court was correct in holding that the writ of *certiorari* did not lie to review the action of the commission herein, for the reason that the schedule of rates to be charged in the future on cottonseed from points within the state to other points within the state was a legislative rule or order adopted by the commission, which is not subject to review by the courts.

The writ of *certiorari* in this case was granted under sections 72 and 73 of Hemingway's Code (sections 90 and 91, Code of 1906), which provide that the judge of the circuit court may grant the writ, and further provide upon hearing, when the case has been removed by *certiorari,* the court is confined to the examination of questions of law arising or appearing on the face of the record or proceedings; and, in case of reversal, the circuit court should enter such judgment as the justice should have entered, or may try the case anew on its merits. The following section 73 provides that like proceedings may be had to review the judgment of all tribunals inferior to the circuit court, whether the appeal be provided by law from the judgment sought to be reviewed or not.

Sections 7627 and 7634 of Hemingway's Code (sections 4842 and 4849, Code of 1906) define the powers and method of procedure conferred upon the railroad commission by the legislature, and, among other things, give the commission the power to revise tariffs, and, in so doing, the commission is required to take into consideration "the character and nature of the service to be rendered and the entire business of the railroad or other common carrier and its earnings from all kinds of traf-

fic, and shall so revise, fix, and regulate the charges as
to allow reasonable compensation for the services to
be rendered. It shall exercise a watchful and careful su-
pervision over the tariffs of charges of every railroad
and other common carrier, and shall revise the same
from time to time, as justice to the public and the rail-
road and other common carriers may require, and shall
increase or reduce any of the rates as experience and
business operations show to be just.''

The railroad commission has no implied power. See
*Gulf & Ship Island Railroad Co.* v. *Railroad Commis-
sion,* 94 Miss. 134, 49 So. 118; *State* v. *Y. & M. V. R. R.
Co.,* 87 Miss. 679, 40 So. 263.

The counsel for the railroad companies contend that
the order or rule or schedule of tariffs revised and adopt-
ed by the railroad commission is divisible into two parts;
the first portion of the order finding that the then ex-
isting rates were unreasonable is the judicial ascertain-
ment of a then existing fact; that in so doing, the com-
mission functioned judicially; that the remaining por-
tion of the order fixing rates for the future was a legis-
lative act; and then concede ''that the latter is purely
legislative and cannot ordinarily be reviewed by *certio-
rari* though the rule is not without limitations and ex-
ceptions.'' The counsel's main contention for the re-
view of this case is based upon the fact that the public
interest was not considered in that the rates complained
of destroyed competition from points without the state
in the cottonseed industry. We may seriously ques-
tion whether or not this raises any question of law which
would be properly reviewable by the courts, but we shall
not undertake to go into that matter, because we think
the circuit court had no judicial act of the railroad com-
mission before it, and properly quashed or dismissed
the writ.

There is no question here but that the commission
fixed a schedule of rates to be observed in the future, and
necessarily considered the former rate which had been

in existence for a long time prior thereto. Counsel for appellant lay much stress upon a single sentence from the case of *Interstate Commerce Commission* v. *C. N. O. & T. P. Railroad Co.*, 167 U. S. 479, 17 S. Ct. 900, 42 L. Ed. 243, wherein Mr. Justice Brewer, as the organ of the court, used this sentence in the course of his discussion:

"It is one thing to inquire whether the rates which have been charged and collected are reasonable—that is a judicial act; but an entirely different thing to prescribe rates which shall be charged in the future—that is a legislative act"—citing numerous authorities.

We think too much importance is attached to this declaration, and that the meaning of the court is obvious when it is considered that it was holding that Congress had not vested the Interstate Commerce Commission with the power to prescribe rates. Taking this language of Mr. Justice Brewer in connection with the context, it is manifest that he was in nowise attempting to hold that the act of Congress authorized the commission to revise or prescribe rates. As evidence of this, statutes creating railroad commissions in various states are quoted in the opinion, and especially those which gave the power to fix or revise rates, concluding with the statement that, "Congress has not conferred upon the commission the legislative power of prescribing rates, either maximum or minimum or absolute."

The supreme court of the United States passed upon this precise question in the case of *Louisville & Nashville Railroad Co.* v. *Garrett*, 231 U. S. 298, 34 S. Ct. 48, 58 L. Ed. 229, which case involved an order of the railroad commission of Kentucky, wherein it was held that prescribing rates for the future is a legislative and not a judicial act; that in prescribing intrastate rates the legislature of the state may act directly, or, in the absence of constitutional restriction, it may commit the authority to so do to a subordinate body; that the legislature may determine what are reasonable rates, either directly

143 Miss.—52.

or through a subordinate body, and adopt methods like those of judicial tribunals to elicit facts without invading the judicial function, and we think the following from the opinion is decisive:

"The contention is that, before the commission makes such an order, it is required to exercise judicial functions. It is first to determine whether the carrier has been exacting more than is just and reasonable; it is to give notice and a hearing; it is to 'hear such statements, arguments or evidence offered by the parties' as it may deem relevant; and, it is in case it determines that the carrier is 'guilty of extortion' that it is to prescribe the just and reasonable rate. Still, the hearing and determination, viewed as prerequisite to the fixing of rates, are merely preliminary to the legislative act. To this act, the entire proceeding led; and it was this consequence which gave to the proceeding its distinctive character. Very properly, and it might be said, necessarily—even without the express command of the statute—would the commission ascertain whether the former, or existing, rate, was unreasonable before it fixed a different rate. And in such an inquiry, for the purpose of prescribing a rule for the future, there would be no invasion of the province of the judicial department. Even where it is essential to maintain strictly the distinction between the judicial and other branches of the government, it must still be recognized that the ascertainment of facts, or the reaching of conclusions upon evidence taken in the course of a hearing of parties interested, may be entirely proper in the exercise of executive or legislative, or distinguished from judicial, powers. The legislature, had it seen fit, might have conducted similar inquiries through committees of its members, or specially constituted bodies, upon whose report as to the reasonableness of existing rates it would decide whether or not they were extortionate and whether other rates should be established, and it might have used methods like those of judicial tribunals in the endeavor to elicit the facts. It is the nature

of the final act' that determines 'the nature of the previous inquiry.' *Prentis* v. *Atlantic Coast Line,* 211 U. S. 210, 227 [29 S. Ct. 67, 70 (53 L. Ed. 150)].''

Our own court in the case of *Cumberland Telephone & Telegraph Co.* v. *State ex rel. Potter, Attorney-General,* 135 Miss. 835, 100 So. 378, held that the act of the railroad commission in fixing a future rate was a legislative one. Mr. Justice HOLDEN, speaking for the court, said:

''The attorney-general contends the writ of *certiorari* will lie because the order of the railroad commission is *quasi*-judicial in its character, and relies upon the case of *Gulf Company* v. *Adams,* 85 Miss. 772, 38 So. 348, to sustain his position. We have given exhaustive consideration to the case before us, and have carefully reviewed all of the authorities cited by counsel on either side, and we have reached the conclusion the position taken by the appellant is well grounded, and that the writ of *certiorari* will not lie to review an order of the railroad commission fixing rates to be charged by the telephone company.

''We think this view is sound, and may be rested upon the sole ground that the order of the railroad commission fixing the telephone rates was a legislative act pure and simple, and, under sections 90 and 91, Code of 1906 (sections 72 and 73, Hemingway's Code), no appeal, or *certiorari,* lies from the order of the commission while exercising a legislative function. The authorities overwhelmingly support this view, and *Gulf Co.* v. *Adams, supra,* is not in conflict therewith. *I. C. R. Co.* v. *Dodd,* 105 Miss. 23, 61 So. 743, 49 L. R. A. (N. S.) 565; *Board* v. *Melton,* 123 Miss. 615, 86 So. 369; 5 R. C. L. 252; *Wulzen* v. *Board,* 101 Cal. 15, 35 P. 353, 40 Am. St. Rep. 17, note pages 29, 34, and 36; *Degiovanni* v. *Public Service Commission,* 45 Nev. 74, 197 P. 582; 4 R. C. L. 608; *Prentis* v. *Atlantic Coast Line R. Co.,* 211 U. S. 210, 29 S. Ct. 67, 53 L. Ed. 151; *L. & N. R. Co.* v. *Garrett,* 231 U. S. 298, 34 S. Ct. 48, 58 L. Ed. 229.  . . .

"In the *Gulf Co.* v. *Adams case,* it would appear at first sight that the court allowed the writ of *certiorari* to review the order of the railroad commission fixing a rate for privilege taxation, and in that way similar to the case before us, but on a careful review of the Gulf Company case it will be observed the commission was there adjudicating a present or past fact, in that it decided the classification of the railroad for privilege taxes. There was a dispute and a judgment there; an administrative or legislative order here. The board did not undertake to fix any rates of taxation, but merely determined the class of the railroad for privilege taxation, which taxation was fixed upon that class by the legislature, and not the commission. This was the exercise of a *quasi*-judicial jurisdiction."

The railroad commission in the instant case fixed a schedule of rates to be charged for transporting cottonseed intrastate to be observed in the future, and the fixation of this rate was a matter which the legislature may have itself done by the enactment of a statute. As was held in the *Garrett case, supra,* the legislature may commit the delicate duty of passing this character of statute or order to a body or board called a railroad commission; and when it fixes the rate, it must of necessity be a legislative act for we do not look to the processes used by the legislative body, but to the completed act itself, and by that we must say whether or not the thing done is legislative or judicial.

The railroad commission fixed a tariff for future observance, and in so doing unsettled another tariff which had been in existence for a number of years, and inferentially in so doing evidently thought the existing rates were not reasonable, but we cannot inquire into the mind of a legislative body where no fraud is charged to determine the nature and quality of the act. The result in the instant case of the investigation was the enactment of a law fixing a schedule of rates to be observed in the future within the state of Mississippi. This power had

been delegated by the legislature to the railroad commission, and the court would have no more right to review this act than it would have by *certiorari* to review it if the same tariff had been adopted by the legislature itself. It is the same as if it had been adopted by the legislature notwithstanding judicial processes were used in the fixation of its rule or law or order. We must not look in this case to the initiation of the proceeding, but we must look to the conclusion of the matter; and the thing evolved finally by the railroad commission is to determine the nature of the proceeding. There is no dispute in the authorities. It is conceded here that fixation of rates by the legislature or by the creature of the legislature is a legislative function; and the fact, if it be a fact, that judicial processes were used in arriving at the proper rate to be fixed, does not change same from legislative to judicial.

The circuit court properly declined jurisdiction to entertain the writ of *certiorari* in this case.

*Affirmed.*