### JONES BROS. v. SOUTHERN RY.

COMMON CARRIER—FREIGHTS—WAREHOUSEMAN.—Sec. 2094, of Code of 1902, delegates to railroad commission power to prescribe rates for storage of freight and to fix the time after the arrival of freight at its destination when storage charges shall begin, but it does not delegate to the commission the power to fix when the liability of carrier ends and that of warehouseman begins. This is a legislative question and cannot be delegated.

Before GAGE, J., Bamberg, Fall Term, 1906.   Affirmed.

Action by Jones Bros. against Southern Railway Co. From judgment for plaintiff, defendant appeals.

*Mr. Robert Aldrich,* for appellant.

*Mr. Jno. R. Bellinger,* contra.

February 5, 1907.   The opinion of the Court was delivered by

MR. JUSTICE GARY. The complaint alleges "that on the 13th day of October, 1905, at Bamberg, in the county and State first aforesaid, three top buggies of the value of ninety-eight 50-100 dollars, and one case of drugs, of the value of eight dollars, all the property of the plaintiffs, were burned while in the custody and under the control of the defendant as such common carrier, the same having been entrusted to the defendant to be transported to Bamberg, and there delivered by it to the plaintiffs, in consideration of the usual charges to be paid therefor; that a claim for the loss of said goods, to wit: for ninety-eight dollars and fifty cents for said buggies, and six 50-100 dollars for the case of drugs, and twenty-five cents freight charges paid thereon, aggregating one hundred and five 25-100 dollars, was filed with said defendant at Bamberg as aforesaid; but the same has never been paid or adjusted, the said claim having been filed on the 16th day of October, 1905, and the plaintiffs allege that the said defendant is liable to them for the penalty of fifty dollars in such case made and provided, in addition to the value of said goods."

The answer of the defendant was a general denial.

There was testimony tending to show that some of the goods arrived at the place of destination, on the 28th of September, 1905, and others on the 3d of October, 1905.

The testimony was conflicting upon the question, whether the consignees received notice before the fire, that the goods had arrived. The jury rendered a verdict in favor of the plaintiffs, for $163.53.

The sole ground of appeal is as follows: "That his Honor, the presiding Judge, erred in law in charging the jury that the liability of a common carrier of goods continued until the expiration of a reasonable time after the arrival of the goods at the destination, to enable the consignee to remove them, and that what is such reasonable time is a question for the jury."

The ruling of his Honor, the presiding Judge, is in accord with the decision of this Court, in the case of *Brun-*

*son and Boatright* v. *Ry.,* ante, 9. The appellant's attorney, however, relies upon section 2094 of the Code of Laws, which is as follows: "Power is hereby conferred on the Railroad Commission of South Carolina, and they are required to fix and prescribe a schedule of maximum rates and charges, for storage of freight made and charged by a railroad company, doing business in this State, and to fix at what time after the reception of freight at place of destination, such charges of storage shall begin, with power to vary the same according to the value and character of freight stored, the nature of the place of destination, and residence of consignee, and such other facts as, in their judgment, should be considered in fixing the same.

"All the provisions of the act creating the railroad commission and acts amendatory, prescribing the procedure of said commission in fixing freight and passenger tariffs, and hearing complaints of carriers and shippers, and of altering and amending said tariffs, shall apply to the subject of fixing and amending rates and charges for storage as aforesaid."

Also upon section 2082 of the Code of Laws, which contains the following provisions: "The power herein conferred upon the commissioners to fix passenger and freight rates, joint and several, are hereby delegated to them by the General Assembly, as fully as the General Assembly itself could exercise them."

Also upon the following resolutions, found on page 689, vol. 1, Reports and Resolutions of the General Assembly, 1906, of which he contends the Court should take judicial notice:

*Rules and Regulations of the South Carolina Railroad Commission for Storage on Package Freight, Effective August 1, 1901.*

. "Whereas, an act was passed by the General Assembly of South Carolina at the regular session of 1901, and there-

after approved by the Governor on the fifteenth day of February, A. D. 1901, authorizing and requiring the Board of Railroad Commissioners to fix and prescribe a schedule of maximum rate and charges for storage made and charged by railroads doing business in this State, and to fix what time after the reception of freight at place of destination such charges of storage shall begin, and for other purposes; now, be it resolved, that we, the Board of Railroad Commissioners, do, by virute of the authority conferred by said act, fix the following rules and maximum rate for storage charges, to apply to all freight stored by the railroads doing business in this State.

"1. All freight received and delivered is subject to storage regulations.

"2. All package freight not removed by owners from the custody of the company within seventy-two (72) hours after legal notice of the arrival thereof has been given to the consignee, computed from twelve (12) o'clock of the day following the date of such notice of arrival, shall thereafter be subject to a charge for storage, as set forth in rule 4 of these regulations."

The general rule is that Courts will not take judicial notice of the proceedings, rules, and regulations, of Commissions or administrative boards. 17 Enc. of Law, 916. But waiving this objection, the exception cannot be sustained.

Section 2094 of the Code of Laws delegates to the Railroad Commission power to prescribe rates for storage, and to fix at what time after the reception of freight, at place of destination, the charges for storage shall begin. But it does not purport to deal with the question as to when the liability of a railroad as a common carrier ceases and that of a warehouseman begins. It by no means necessarily follows that a railroad is exempt from liability as a common carrier, simply because it has the right to exact storage charges.

It would be competent for the legislature to confer upon a railroad, the right to charge storage from the time the goods were unloaded, although liable as a common carrier for a reasonable time after the arrival of the goods.

Furthermore, changing the rule as to the time when the liability of a common carrier ceases, and that of a warehouseman begins, is not an act of executive administration, but involves a legislative question. Therefore, it could not be delegated to the railroad commission.

*P. R. Mining Co.* v. *Hagood,* 30 S. C., 519, 524, in which the Court thus states the principle: "It is undoubtedly true, that legislative power cannot be delegated, but it is not always easy to say what is or what is not legislative power in the sense of the principle. The legislature is only in session for a short period each year and during the recess cannot attend to what might be called the business affairs of the State. From the necessity of the case, as well as the character of the business itself, that must be performed by agents for that purpose—such as the Railroad Commission, regents of the lunatic asylum, the State Board of Canvassers of Elections, Sinking Fund Commission, etc. The numerous authorities cited in the argument show conclusively, that while it is necessary that the law should be full and complete, as it comes from the proper law-making body it may be, indeed, must be, left to agents, in one form or another to perform the acts of executive administration, which are in no sense legislative. Without encumbering this opinion with the authorities, we think the view is well stated in Lock's Appeal, 72 Pa. St., 491: 'Then the true distinction I conceive, is this: the legislature cannot delegate its power to make a law, but it can make a law to delegate its power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend. To deny this, would be to stop the wheels of government. There are many things, upon which wise and useful legislation must depend, which cannot be known to the law-making power, and must, therefore, be a subject

of inquiry and determination, outside of the halls of legis-lation.'"

An interesting article on this question will be found in the Central Law Journal of 7th July, 1905, page 3.

It is the judgment of this Court, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE POPE *did not sit in this case.*