GULF & SHIP ISLAND RAILROAD COMPANY v. MISSISSIPPI RAILROAD COMMISSION.

[49 South. 118.]

RAILROADS. *Stopping trains. Power of commission.* *Code* 1906, §§ 4849, 4854.

> The Mississippi Railroad Commission is without power to compel a railroad company to stop its passenger train at a point, without the limits of a city, where it has no regular station, although its line crosses the track of another railroad company at the place and the latter maintains a passenger station there; such power is not given by:—
>
> (a) Code 1906, § 4849, empowering the commission to determine complaints of time schedules and regulate the times for arrivals and departures of trains to and from regular stations; nor
>
> (b) Code 1906, § 4854, providing that railroads shall establish and maintain such depots as shall be reasonably necessary for the public convenience and shall stop such of its trains thereat as business and public convenience may require; no
>
> (c) Any other statute of the state.

FROM THE MISSISSIPPI RAILROAD COMMISSION.*

The Mississippi Railroad Commission, appellee, claiming authority under Code 1906, §§ 4849 and 4850, on the 8th of September, 1908, entered an order on its minutes directing the Gulf & Ship Island Railroad Company, appellant, to stop its south

* This case was the first one appealed to the supreme court directly from the Mississippi Railroad Commission, under Code 1906, § 4890, providing for such appeals.

bound passenger train, for the reception of passengers and their baggage, near where its track crosses the line of the Mississippi Central Railroad Company on the outskirts of the village of Silver Creek in Lawrence county. The Mississippi Central Railroad Company had established and was maintaining a station, depot or stopping place near the intersection of the two roads, but appellant never had done so.

From the order or judgment the appellant prosecuted a direct appeal to the supreme court.

*McWillie & Thompson, R. L. Dent* and *J. H. Neville,* for appellant.

Under the provisions of Code of 1906, § 4890, wherein the right to this appeal is found, appellant can only complain of the commission's want of power in the premises.

The school boy's composition on "Snakes in Ireland," a model of excellence entirely covering the subject, consisted of but six words, "There are no snakes in Ireland," and our argument on the general question of the commission's power to make the order appealed from might well be made to consist of but five, "No statute grants the power." We will, however, add, by way of elaboration, that the express powers conferred on the commission touching the stopping of trains and location of depots by necessary implication negative the power claimed for it in this case. The power most in point is conferred by Code 1906, § 4854, authorizing the commission to cause all passenger trains to be stopped for passengers to get on and off in a city at any place other than a depot where it is for the convenience of the traveling public. This power is expressly limited to places in a city and this court judicially knows that the railroad crossing in question is not in a city, that Silver Creek itself, and a point three fourth of a mile away from that village are not cities. The jurisdictional facts are not apparent of record to warrant the conclusion that the commission acted upon the idea that the crossing in question was in a city.

The statutory language under consideration is the exact equivalent of an express provision negativing the power of the commission to require trains to stop in the country, in villages or towns.

It will be observed that the order of the commission does not purport to require the railroad company to establish a depot at the crossing away from the town and three quarters of a mile from its established depot; the place is not within an incorporated city, town or village, and no question arises on the first or the first part of the second sentence of Code 1906, § 4854.

The effort of adverse counsel to find warrant for the commission's order in Code 1906, § 4849, almost amounts to a confession of error. Whatever power is conferred on the commission by that section is conditional, dependent upon the existence of a complaint which in the language of the statute "must be in writing, and specify the grounds of complainant . . . against which complaint is made." The whole section clearly contemplates a moving party, a complaint in writing, etc. In this case there was no party complainant nor written complaint. In the absence of either, the power was not conferred on the commission; it was without jurisdiction of the subject matter and the order or judgment appealed from should be reversed and vacated and the proceeding dismissed. Under a statute conferring power conditionally the commission has no power unless the conditions exist. This court has no power by virtue of its general appellate jurisdiction to reverse the judgments and decrees of circuit and chancery courts; it has power to do so only when causes are properly brought before it by appeal in accordance with statutory regulations. This court has just as much implied power as the railroad commission. The process of broadening power by implication is fraught with grave dangers.

The case cited by the attorney general in his supplemental brief, *North Carolina Corporation Commission v. Atlantic Coast Line R. Co.* 137, N. C. 14; S. C. 49, S. E. 191, affirmed 206 U. S. 1, is not at all adverse to appellant's contention.

Under the North Carolina statute, Laws N. C. 1899, p. 291, ch. 164, it was expressly provided that the commission should have:—

(a) Such general control and supervision of railroads as might be necessary to carry the statute into effect; and

(b) That all common carriers shall afford reasonable, proper and equal facilities for the interchange of traffic and forwarding freight and passengers *and shall make as close connection* as practicable for the convenience of the traveling public.

This statute affirmatively granted the power there and here in question.    The North Caroilna contest was over the validity of the statute and the decision simply upheld legislative power. Here the contest is whether the legislature has ever acted authorizing the commission in the premises.    We say no; and unless the attorney-general has more pertinent authority for the maintenance of the commission's cause than the North Carolina case, appellant is surely entitled to a reversal.    The power granted the North Carolina commission was not conditional but absolute.

The court having propounded for discussion the question whether the words "any depot" in the first sentence of Code 1906, § 4854, relate to the depots of another railroad company than the one by which it was established and is maintained, we shall limit our observations to that exact question, after craving pardon for calling attention to the fact that the question is academic, since the record fails to show with accuracy that the Mississippi Central Railroad Company has or had a depot at or near the crossing of the two roads in the vicinity of Silver Creek.

The word "depot," embracing its use once in the plural, is used five times in the code section under consideration, and four out of the five times, certainly, is used as meaning depots belonging to the company establishing and maintaining them. The word "depots" in the second line of the section is so used; it is part of the statute directing the establishment and maintenance of depots, and no man can reasonably contend that a railroad company is required to establish and maintain the depots of

other companies.  There is no express limitation in the sentence to depots on a company's own line, and, if we depart from the implied limitation a railroad company may be required to maintain a depot at a river steam-boat landing or anywhere else in the woods, many miles from any railroad track.  The very nature of the subject matter causes us to reject a construction of the statute leading to such absurdities.  The shock to common sense is but less in degree when we consider the statute as requiring the establishment and maintenance of depots by a railroad company on the lines of other companies, over whose tracks it has no control.

The word "depot" used in the fifth line of the section just as clearly refers only to the company's own depots, for no man can reasonably contend that a railroad company is obliged to establish and maintain a depot for or on the line of some other railroad, although in a city through which it passes.  If the word "depot" at the beginning of the fifth line of the section can be construed as embracing a depot of another company then a railroad company can be compelled to construct and maintain a depot for and on the track of another company wholly off of its own line.  The second sentence of the section, like the first, has no express limitation restraining its scope to depots on a company's own line.

The word "depot" in the fourth line from the bottom of the section manifestly refers to the depots which by the preceding part of the sentence the companies are required to maintain; and here too we find no express limitation to places on the company's own line at which persons must be permitted to get on and off passenger trains; but the legislature never contemplated that passenger trains should depart from the company's own rails; they are not required even to go upon the rails of other railroads. Unless a limitation can be implied, confining the places for the getting on and off of passenger trains on the railroad company's line, the commission has power to require a passenger train to stop and allow passengers to get on and off at any place in a city

it may designate, although it be off of and away from all rails and railroads.   Of course this conception is absurd, but it demonstrates that there is an implied limitation confining the places to points on the company's own line; it has control of none other.

In the second line from the bottom of the section the word "depot" is used in such a way that no sensible construction can make it refer to depots of other companies.   It too by necessary implication refers only to the company's own depots and not to those of other companies.

The word "depot," therefore, is used in the same section of the statute four out of five times in a sense limiting it to a company's own depots.   How is it used in the third line, the only other time employed in the section?

The words "any depots" as used in the third line of the section are not so broad as the words "such depots" in the second line; the words "such depots" embrace all, both freight and passenger depots, reasonably necessary for public convenience.   It was not deemed essential that railroad companies should stop their passenger and freight trains at all depots; certainly passenger trains are not required to stop at freight depots and freight trains are not required to stop at passenger depots; therefore , the latter clause of the first sentence of the section provided that every railroad "shall stop such of the passenger and freight trains at" (not such depots, for that would have required all trains to stop at every depot, but) "at any depot as the business and public convenience shall require."   The words "any depot" means those of "such depots" as the business and public convenience may require, they relate back to "such depots" and are a part of them; and we have already seen that "such depots" mentioned in line two of the section are those which a company is required to establish and maintain, and nothing could be more absurd than a contention that a company can be forced to establish and maintain depots on the lines of other companies.

In the case of *Regina v. Commissioners of Poor Laws, etc.,* 6 A. & El. 68, 69, the Chief Justice of the King's Bench said:
"We disclaim altogether the assumption of any right to as-

sign different meaning to the same words in an act of Parliament on the ground of a supposed general intention in the act. We thing it necessary to give a fair and reasonable construction to the language used by the legislature; but we are not to assume the unwarrantable liberty of varying the construction for the purpose of making the act consistent with any views of our own."

A word repeatedly used in a statute will bear the same meaning throughout the statute, unless a different intention appears. Sutherland on Statutory Construction, § 255, and authorities cited.

*J. B. Stirling,* attorney general for appellee.

It is not possible to properly construe section 4854, Code of 1906, without considering all of the statutes upon the subject of the regulation of railways.

For, "to ascertain the intent of a law, it is competent to look to the state of affairs existing at the time of its enactment" and "all statutes relating to the same subject must be taken as one system and construed consistently if this can be done." 46 Miss. 157, 45 Miss. 145, 45 Miss. 294, 46 Miss. 581.

The general intent of the legislature is to be arrived at and this can only be done by a consideration of the chapter relative to supervision of common carriers enacted in the light of the constitution and carrying out the plain provisions thereof.

Section 184 of the constitution, is in part, as follows:

"Section 184.  *  *  *  Every railroad company shall have the right with its road to intersect, connect with, or cross any other railroad; and all railroad companies shall receive and transport each others passengers, tonnage and cars, loaded or empty without unnecessary delay or discrimination."

By section 4839 of the chapter on supervision of common carriers railroads are declared to be public highways and not allowed to discriminate and this means a discrimination in service as well as otherwise.

By section 4849, the commission is required to "docket, hear

and determine all complaints made of any time schedule, etc. . . . on the ground that the same in any respect, is, in the case of time schedule, unnecessarily inconvenient for the public, etc."

This necessarily implies a regulation of the schedule of the railroad companies and the schedule is nothing more than a time sheet showing when trains shall depart from initial stations and arrive at the terminus of the railroad company and the time when it shall arrive at and depart from intermediate stops. If the order of the commission regulating the schedule is reasonable then it must be obeyed.

Under the decision in *Minn. St. P. etc. R'y Co. v. Railroad Commission,* 16 N. W. 905, the court said:

"Construing a statute which provides that on complaint the commission might require change in the service, the commission might upon its own motion make the necessary order."

By section 4854 railroads are required to "stop such of the passenger and freight trains at any depot as the business and the public convenience shall require."

This means what the language plainly indicates that the trains on the railroad shall be stopped at any depot that the railroad passes. Where the language is plain there is no room for construction and the record showing that at this crossing the Mississippi Central Railroad maintains a "passenger station and stopping place" there is no room for the argument that the record fails to disclose that there is a depot at the crossing.

By section 4863, the railroad commission is empowered to designate the site for location of the depot and by section 4864 it may require the erection of union passenger depots and "transfer stations" and certainly the power would be implied to require trains to stop at stations after the same had been erected.

By section 4843 the railroad commission is empowered to "fix the charge of and shall supervise and regulate all persons, natural or artificial, who may own or operate, express, telegraph, telephone or sleeping car companies or other associations governing or controlling cars or rolling stock of railroads in this state in the same manner as railroads."

And by section 4879 "The railroad commission shall require all the necessary information from such companies and shall make such reasonable orders for their supervision and regulation from time to time as to their charges and otherwise as the public interest may require.'

This shows what the intention of the chapter is relative to railroad companies and that a general supervision is given over railroad companies to the same extent as is given over other companies mentioned.

By section 4886 one or more commissioners shall visit each county and see if the community is discriminated against and if the community is discriminated against the commission is required to remedy same.

By section 4858 the railroad commission as a whole is required, as far as practicable to visit stations and investigate to see what order or rules are not being complied with and to require that they be complied with.

By 4896 the railroad companies are required to stop at crossings unless the commission relieves them.

It will be recalled that section 1353 inflicts a penalty for failing to stop unless excused by reason of order entered under section 4896.

It was the plain intent of the constitution as disclosed by section 184 that railroads should receive and transport one another's pessengers without unnecessary delay, and this requirement that legislation for supervision of railroads was instant case must be obeyed.

Section 186 of the constitution requires the legislature to pass laws for the supervision of railroads and it was under this requirement that the legislature for supervision of railroads was enacted.

*Corporation Commission v. Railroad,* 137 N. C. 14, commonly referred to as the *"Railroad Connection case,"* deals with the right of railroad commission to force two independent intersecting lines to so arrange their schedule as to make connection at the point of intersection. The order required one of the lines

to quicken its schedule so as to arrive at the connecting point, in this case, Selma, N. C., some twenty minutes earlier than it had formerly done, and further required the other railway to detain its train at Selma for fifteen minutes in order to assure the connection. It will therefore be readily seen that the case in some respects was strikingly like the one under consideration. It was earnestly insisted that the corporation commission of North-Carolina was without authority to make the order, but this contention was disallowed by the court in a characteristic opinion by Judge CLARK. I ask the court's attentive consideration of the opinion in this case, as it reviews many of the best authorities in the United States. The authority of the commission to make the order was based upon the statutes of North Carolina, and one of those most relied on was the one which conferred upon the commission "general control and supervision of all railroad companies, etc." Compare this provision with those sections of our chapter on Supervision of Common Carriers which give power in general terms to the commission to regulate and supervise all common carriers.

This North Carolina case, it should be noted, has been affirmed by the supreme court of the United States in *Atlantic Coast Line R. Co. v. N. C. Corp. Com.*, 206 U. S. 1 (51 L. Ed. 933) in an able opinion by Mr. Justice White.

Argued orally by *R. H. Thompson,* for appellant and by *J. B. Stirling,* attorney general, for appellee.

WATKINS,* Special Judge, delivered the opinion of the court.

Upon the 8th day of September, 1908, the railroad commission of the state of Mississippi passed an order requiring the appellant, the Gulf & Ship Island Railroad Company, to stop its

---

* FLETCHER, J., having been of counsel in the case before his appointment to the bench, recused himself and WM. H. WALKINS, Esq., a member of the Supreme Court bar, was appointed and presided as special judge in the case.

regular south-bound passenger train for not more than thirty minutes at the intersection of the Mississippi Central Railroad, the point of intersection being three-quarters of a mile north of the depot of the appellant road in the village of Silver Creek, and wait for the east-bound passenger train on the Mississippi Central Railroad, and to receive and discharge passengers, and baggage at said intersection. It is shown from the record that the appellant maintained no depot or stopping place at this point; that it had a regular depot and stopping place in the village of Silver Creek, as above stated; but that the Mississippi Central Railroad had and maintained a depot very near the point of intersection. From this order, under section 4890 of the Code of 1906, the Gulf & Ship Island Railroad Company, the appellant has prosecuted this appeal, which presents for our determination the question of the power of the railroad commission to make the order complained of.

This appeal involves the concrete question of law as to whether or not the railroad commission had the authority under the law to compel a railroad company to stop its passenger trains at the intersection of another railroad, not being within the limits of any city, at which point it had no regular depot or stopping place, and wait thirty minutes for the train of another railroad, and at said point receive and discharge baggage and passengers. The railroad commission of the state of Mississippi is a creature of the legislature. It exists only by virtue of chapter 139 (sections 4826–4899) of the Code of 1906, and all of its powers and duties are therein specifically enumerated. It may be stated, in this connection, that we have no general statute submitting to the railroad commission general supervision over railroad companies, as will be found in some states; and, while general power is given to the commission to do many things, however, in each instance it will be found that the power is specifically granted. It is universally held that a railroad commission is a mere administrative or advisory board created to carry out the will of the legislature, and that, before

it can do any act, it must be able to point to its grant of power from the legislature, which power must affirmatively appear, and must be given in clear and express terms, and nothing will be had by inference. *State v. Yazoo & Miss. Valley R. R. Co.*, 87 Miss 679, 40 South. 263; 23 Am. & Eng. Ency. of Law (2d ed.) p. 653; *Railroad Commission v. Navigation Co.*, 17 Or. 65, 19 Pac. 702, 2 L. R. A. 195; *Railroad Company v. R. R. Com.*, 73 Kan. 168, 84 Pac. 755; *Blake v. R. R. Co.*, 73 N. H. 597, 64 Atl. 202; *Jones Bros. v. Sou. Ry. Co.*, 76 S. C. 67, 56 S. E. 666; *State v. R. R. Com.*, 47 Wash. 627, 92 Pac. 459; *Railroad Commission v. W. U. T. Co.*, 113 N. C. 213, 18 S. E. 389, 22 L. R. A. 570. In the case of *Railroad Commission v. Navigation Company, supra,* the supreme court of the state of Oregon uses the following language: "It has for a very long time been considered the safer and better rule, in determining questions of jurisdiction of boards and officers exercising powers delegated to them by the legislature, to hold that their authority must affirmatively appear from the commission under which they claim to act. There is too strong a desire in the human heart to exercise authority, and too much of a disposition upon the part of those intrusted with it, to extend it beyond the design for which, and the scope within which, it was intended it should be exercised, to leave the question of its extent to inference."

It is perfectly clear, from the authorities we have cited, that, if the railroad commission had the power to make the order complained of in this case, it must have obtained the same by express legislative grant; and in order to determine this question it is only necessary to look at the source of authority under which the commission must act, and ascertain whether or not the power sought to be exercised in this instance actually existed. It is contended on behalf of the appellee that section 4849 of the Code conferred upon the railroad commission the authority to make the order in question. This section gives the commission power, among other things, to hear and determine

all complaints made of any time schedule.   We do not think that the power to hear and to determine complaints of any time schedule is sufficiently broad to give the railroad commission the authority which it has assumed in this case.   In our opinion the authority to determine complaints made of any time schedule, and to make any change deemed proper therein, as provided in said section, conferred upon the commission authority only to regulate the time at which any train should arrive and depart from any regular stopping place, and cannot be so construed as to confer upon the commission the right to compel a railroad company to stop a passenger train at a point other than a regular station.

Upon a reargument of this case it was contended that the commission obtained the authority to make the order in question from the first clause of section 4854 of the Code, which provides that "every railroad shall establish and maintain such depots as shall be reasonably necessary for the public convenience, and shall stop such of its passenger and freight trains at any depot as the business and public convenience shall require;" the contention being that the words "any depot" might include the depot of any other railroad company.   However, after a careful consideration of the entire section, we are of the opinion that the legislature had in mind the fact that frequently railroad companies, in disregard of the rights of the public, cause trains, both passenger and freight, to pass without stopping stations along their line, and that this statute conferred upon the railroad commission the authority to compel any railroad company to stop any of its trains, whether passenger or freight, at any depot along its own line; and the contention that the commission has any authority to compel a railroad company to stop its passenger trains at any place other than a regular depot outside of the limits of a city is clearly negatived in that clause of the above section which grants to the railroad commission power "to cause all passenger trains to permit passengers to get on and off in a city at any place other than at the depot,

where it is for the convenience of the traveling public." It is practically conceded in this case that the commission had no authority to pass the order complained of unless the same was obtained from either one or the other of the two sections referred to. We are therefore of the opinion that neither section 4849 nor 4854 of the code conferred upon the railroad commission authority to make the order appealed from in this case.

We have carefully considered the case of *North Carolina Commission v. Coast Line R. R. Co.,* 137 N. C. 14, 49 S. E. 191, 115 Am. St. Rep. 636, cited by learned counsel for the appellee; but by the laws of the state of North Carolina the railroad commission was given general control and supervision of railroads, and in addition thereto a specific grant of power was given the commission to pass the order complained of in that case, the only question being the power of the legislature to grant the power; while in this case it is not a question of the power of the legislature to grant the power, but as to whether or not the power exercised has ever been granted. We think that the railroad commission should have the authority to require railroad companies to stop their trains at the intersection of another railroad, without regard to whether a regular depot or stopping place is maintained or not, when the public convenience may require it; but this authority must come from the legislative branch of the state government, and not by judicial construction.

We are therefore of the opinion that the railroad commission was without authority to make the order appealed from in this case, and the judgment is accordingly reversed and the cause remanded.                                                        *Reversed.*