MISSISSIPPI RAILROAD COMMISSION *v.* ILLINOIS CENTRAL RAILROAD CO., ET AL.

[74 South. 676, Division B.]

RAILROADS. *Screening passenger coaches. Powers of railroad commission.*

Neither under Code 1906, section 4855, giving railroad commissioners power to establish regulations for passengers depots, nor section 4860, giving it power to make orders as to the number and character of passenger coaches, has the railroad commission the power to require railroads to screen their passenger coaches "to better protect the health of the general traveling public."

APPEAL from the Chancery court of Hinds county Hon. O. B. TAYLOR, Chancellor.

Suit by the Illinois Central Railroad Company and others against the Mississippi Railroad Commission. From a decree for complainants, defendant appeals.

The facts are fully stated in the opinion of the court.

*Ross Collins,* Attorney-General, for appellant.

This is an appeal from the chancery court of Hinds county, Mississippi, making an injunction perpetual against the Railroad Commission and the attorney-general from enforcing an order of the Railroad Commission requiring all railroads doing business in this state to screen their passenger coaches.

The order enjoined was passed by the Railroad Commission and it recited that the protection of the public health made its passage necessary. The railroad companies contend that inasmuch as the state had a state board of health that is charged with the duty and given power to make rules and regulations for the protection of the public health, that the power to make this order was vested exclusively in the state board of health and that the Railroad Commission being a body, as it is claimed, of strictly limited power, could not make any order on the subject whatever because, it is contended, the Railroad Commission was given no power to protect the public health.

I contend that the recital as to the public health would not be exclusive, but that the Commission having made the order, the order would be valid and binding if the Commission had power to make it for the particular purpose specified or not. I contend that the Commission did have power to make the regulation under chapter 39, of the Code, and especially section 4860, of the Code, said section reading as follows:

"Every railroad shall furnish a sufficient number of passenger cars to comfortably accommodate and seat its passengers and if any railroad shall fail to do so, the Commission shall entertain the petition of any person cognizant of the facts. When the petition is filed, the railroad shall be duly notified thereof and after investigating the case. the Commission shall make and certify to the railroad such orders as to the number and character of passenger coaches necessary for the public

conveniences as the commission shall deem proper and in any proceeding concerning the matter, such order of the Commission shall be deemed *prima facie* reasonable and proper.''

It will be noted from a reading of this section that it is made the duty of every railroad company to furnish a sufficient number of passenger coaches to comfortably accommodate and seat its passengers, and if it fails to do so, it is the duty of the Commission to require them to furnish such number and character of passenger coaches necessary for the public convenience, and that in any proceeding concerning the matter, the order of the Commission shall be deemed *prima facie* reasonable and proper. See definition of these terms. The Commission is clearly given power to determine the number and character of passenger coaches necessary for the public convenience and if screening a passenger coach has any reasonable relation to the comfort and convenience of the traveling public, the order is valid because it is clearly settled by all the authorities that the police power of the state extends to the convenience as well as to the health and morals of the public. *Lake Shore & Michigan Southern Railway Company* v. *Ohio,* 173, U. S. 285, 43 L. Ed. 702; *Atlantic Coast Line Railroad Company* v. *North Carolina,* 206 U. S. 1, 51 L. Ed. 933, 11 Ann. Cases, 398; *Atlantic Coast Line Railroad* v. *Ga.,* 234 U. S. 280, 58 Law Ed. 1312.

The first and third headnotes to the *Lake Shore, etc., Railway Company* v. *Ohio,* 173 U. S. 285, 43 L. Ed. 702, read as follows: ''The power exists in each state by appropriate enactments not forbidden by its own or the Federal Constitution to regulate the relative rights and duties of all persons and corporations within its juris-. diction so as to provide for the public convenience and the public good.''

''The power of the state by appropriate legislation to provide for the public convenience, stands upon the same grounds as its power by appropriate legislation to pro-

tect the public health, the public morals, or the public safety.''

In these cases, it is expressly held that the public convenience stands on exactly the same footing as the public health so far as the question of power is concerned. As to the further right of the state to make regulations and orders deemed necessary for the public good, see the following cases: *City of Gainesville* v. *Gainesville, Gas & Electric Power Co.*, 62 So. 919, —— Fla. ——; *State ex rel. Ellis* v. *Tampa Water Works Co.*, 57 Fla. 553, 539, 48 So. 639, 22 L. R. A. (N. S.), 680; I Wyman, Pub. Service Corporations, sec. 113; *Gas Light Co.* v. *Zanesville*, 47 Ohio St. 35, 23 N. E. 60; *State ex rel.* v. *Atlantic Coast Line R. Co.*. 53 Fla. 650, 44 So. 213, 13 L. R. A. (N. S.) 320; 12 Ann. Cas. 359; *People ex rel. Stead* v. *Chicago, etc., R. Co.*, 223 Ill. 571, 7 Ann. Cas. 1; *Kavanaugh Co.* v. *So. Ry. Co.*, 1 Ann. Cas. 705; *People ex rel. Cantrell* v. *St. Louis, etc., R. Co.*, 35 L. R. A. 656, 45 N. E. 824, 38 N. E. 562; *Ex parte Attorney General*, 17 N. B. 667; *State ex rel.* v. *Missouri, etc R. Co.*, 55 Kan. 708, 29 L. R. A. 44, 49 Am. St. Rep. 278, 41 Pac. 964; *Ohio & M. R. Co.* v. *People*, 120 Ill. 200, 11 N. E. 347; *Farmers' Loan & Trust Co.* v. *Henning*, Federal Case, No. 4666; *King* v. *Severn, etc., R. Co.*, 2 Barn. and Ald. 646; *People* v. *Albany, etc., R. Co.*, 16 How. Pr. 523, 11 Abbott Pr. 136; *People* v. *Albany & V. R. Co.*, 24 N. Y. 261, 82 Am. Dec. 295; *Loraine* v. *Pittsburg, etc., R. Co.*, 205 Pa. 132, 61 L. R. A. 502, 54 Atl. 580; *Railroad Commission* v. *Portland, etc., R. Co.*, 63 Me. 269, 18 Am. Rep. 208; *State* v. *Missouri Pacific R. Co.*, 33 Kan. 176, 5 Pac. 772; *Pensacola & A. R. Co.* v. *State*, 25 Fla. 310, 324, 3 L. R. A. 661; 2 Int. Com. Rep. 522, 5 So. 833, 839; *United States* v. *Trans. Missouri Freight Ass'n.*, 166 U. S. 290, 41 L. Ed. 1007-1024; *N. C. Corp. Com.* v. *Atl. Coast Line R. Co.*, 137 N. C. 1, 115 Am. St. Rep. 636, 49 S. E. 191; *San Antonio Street Ry. Co.* v. *State*, 90 Tex. 520, 523, 35 L. R. A. 662, 59 Am. St. Rep. 834, 39 S. E. 926; *Branch* v. *Wilmington, etc.,*

*R. Co.,* 77 N. C. 347; *Talcott* v. *Pine Grove Township,* 1 Flipp. 144, Fed. Cases, No. 13,735.

The court knows judicially that the comfort and health of passengers are directly affected by the screening of cars or the opening of the windows and doors.

*Catchings & Catchings, Fulton Thompson* and *R. H. & J. H. Thompson,* for appellees.

The Railroad Commission had no power or authority to require the railroads to screen their passenger coaches as provided in the pretended order. A discussion of this point will be but the rethreshing of old straw. This court in the case of *Gulf, etc., R. Co.* v. *Mississippi Railroad Commission,* 94 Miss. 134, has said:

"The Railroad Commission of the state of Mississippi is a creature of the legislature. It exists only by virtue of chapter 139 (sections 4926–4899) of the Code of 1906, and all of its powers and duties are therein specifically enumerated. It may be stated, in this connection, that we have no general statute submitting to the Railroad Commission general supervision over railroad companies, as will be found in some states; and, while general power is given to the Commission to do many things, however, in each instance it will be found that the power is specifically granted. It is universally held that a Railroad Commission is a mere administrative or advisory board created to carry out the will of the legislature, and that, before it can do any act, it must be able to point to its grant of power from the legislature, which power must affirmatively appear, and must be given in clear and express terms, and nothing will be had by inference. *State* v. *Yazoo & Miss. Valley R. R. Co.,* 87 Miss. 679, 40 So. 263, 23 Am. & Eng. Ency. of Law (2 Ed.), p. 653; *Railroad Commission* v. *Navigation Co.,* 17 Ore. 65, 19 Pac. 702, 2 L. R. A. 195; *Railroad Company* v. *R. R. Com.,* 73 Kans. 168, 84 Pac. 755; *Blake* v. *R. R. Co.,* 73 N. H. 597, 64 Atl. 202; *Jones Bros,*

v. *So. Ry. Co.,* 76 S. C. 67, 56 S. E. 666; *State* v. *R. R. Com.,* 47 Wash. 627, 92 Pac. 459; *Railroad Commission* v. *W. U. T. Co.,* 113 N. C. 213, 18 S. E. 389, 22 L. R. A. 570.

Since the decision of the case of *Gulf, etc., R. Co.* v. *Mississippi Railroad Commission,* decided April 26, 1909, there have been at least four regular sessions of the Mississippi legislature and there has been no effort whatever to enlarge the powers of the railroad commission in respect to the subject-matter under review. It follows, therefore, that the decision made in that case has met the approval of the legislature; the legislative department of the state is entirely content to withhold from the Railroad Commission general regulatory powers, and the Commission can exercise only the powers expressly granted to it or such powers as are by necessary implication included in any express grant.

*Mayes, Wells, May & Sanders,* for appellee.

The sole question involved is as to the power of the Railroad Commission to pass this order. Our contention is that the Railroad Commission is without any such power, and if there exists in the law any authority to pass the coach screening order, it is with the health board, and not the Railroad Commission.

In the case of *Gulf & Ship Island R. R. Co.* v. *Railroad Commission,* 94 Miss. 124, this court held that the Railroad Commission cannot exercise any power not specifically given it by statute. Citing the following cases: *State* v. *Y. & M. V. R. R. Co.,* 87 Miss. 679, 40 S. R. 263; 23 Am. & Eng. Ency. of Law (2 Ed.), p. 653; *Railroad Commission* v. *Navigation Co.,* 17 Or. 65, 19 Pac. 702, 2 L. R. A. 195; *Railroad Company* v. *R. R. Com.,* 73 Kan. 168, 84 Pac. 755; *Blake* v. *R. R. Co.,* 73 N. H. 497, 64 Atl. 202; *Jones Bros.* v. *So. Ry. Co.,* 76 S. C. 67, 56 S. E. 666; *State* v. *R. R. Com.,* 47 Wash. 627, 92 Pac. 459; *Railroad Commission* v. *W. U. T. Co.,* 113 N. C. 213, 18 S. E. 389, 22 L. R. A. 570.

113 Miss.—53

We start out, then, in the analysis of this case, and in the search for the power which the Railroad Commission assumes to exercise in this instance, with a positive declaration of the court that the powers exercised must affirmatively appear; must be given expressly by statute; and that nothing is left to inference. The above is the rule to guide us in determining whether or not the Railroad Commission had the power to pass this sanitary regulation in reference to the screening of the coaches. No power is given to the Railroad Commission to pass any sanitary regulations except what is contained in section 4855, Code of 1906, and no distorted view of section 4855 could make it mean that the Railroad Commission had the power to pass the order of June 19, 1912. Section 4855 is about a wholly different matter. In the entire search of the statute as to sanitary regulations that the Railroad Commission has the power to force upon the railroads, the only law on this subject is found in section 4855, and relates exclusively to toilets and the condition in which these toilets shall be kept. All other health matters and sanitary regulations are confided to the state health board.

Under chapter 64, Code of 1906, and laws amendatory thereto, the case of *G. & S. I. R. R. Co.* v. *Railroad Commission,* excludes the idea that the Railroad Commission has anything to do with the sanitary regulations of the railroads, because the power does not affirmatively appear nor does it appear by inference. On the contrary, following out the well-known rule of construction *expressio unius est exclusio alterius,* the Commission has no such power. Without the rule announced by the court in the G. I. S. I. Case, the proper rule of construction would be that the Railroad Commission did not have the power, because it is supposed that the legislature in giving it authority to make one sanitary regulation, intended to limit it to that. Chapter 64, Code of 1906, is designated "Health and Quarantine," and under this chapter a board is created for the purpose of adopting

all sanitary regulations, relating both to health and quarantine. Certainly this important power was not intended to be committed to the Railroad Commission, as an administrative board dealing alone with railroads as carriers of freight and passengers and having only the powers designated by statute, such as to provide sufficient and safe equipment.

An examination of chapter 64 of the Code of 1906, is convincing that all such matters are confided to the state board of health. Under section 2487, Code of 1906, it is made the duty of the state board of health to supervise the health interest. Under section 2514 it is made the duty of the health board to prescribe a sanitary code, which shall contain rules and regulations for the hygenic and sanitary conditions of railroad depots, railways, coaches, sleeping cars, etc. Page 15 of the board of health regulations, section 2, provides that no railroad coaches shall be swept or dusted while occupied by passengers, etc., the conflicting authorities cannot exercise the same jurisdiction over the same subject-matter. Rules that might be prescribed by the Railroad Commission might not be approved by the state board of health, and hopeless conflict and confusion might follow. The legislature, therefore wisely committed this whole subject to the state health board.

If the authority to require screens exists at all, it exists in the state board of health alone. The duties of the Railroad Commission are confined to the regulations of railroads as public carriers. The Railroad Commission are not sufficiently experienced in health matters to warrant the legislature in confiding to them any branch of the law relating to health or hygenics, except such as has been authorized in sectoin 4855 of the Code. To compel obedience to section 4855 of the Code is a hygenic matter that any layman might look after.

COOK, P. J., delivered the opinion of the court.

This suit was filed in the chancery court of Hinds county to test the power of the Railroad Commission to require railroads to screen their passenger coaches "to better protect the health of the general traveling public." The appellees challenged the power of the Commission to make such order, and from a decree sustaining the contention of appellees the Railroad Commission prosecuted this appeal.

The Commission contended that it possessed the power, and to support its contention it relies upon section 4860, Code of 1906, which reads as follows:

"Every railroad shall furnish a sufficient number of passenger cars to comfortably accommodate and seat its passengers; and if any railroad shall fail to do so, the Commission shall entertain the petition of any person cognizant of the facts. When the petition is filed, the railroad shall be duly notified thereof, and, after investigating the case, the Commission shall make and certify to the railroad such orders as to the number and character of passenger coaches necessary for the public convenience as the Commission shall deem proper; and in any proceeding concerning the matter, such order of the Commission shall be deemed *prima facie* reasonable and proper."

The railroad companies insist that the statute quoted does not sustain the contention of the Commission. In the first place, they say that the Commission did not make the order for the purposes enumerated in the statute, and secondly the statute does not empower the Commission to pass sanitary ordinances of this character. but this power, if it exists at all, is conferred upon the state board of health by chapter 64, Code of 1906. If we let the order in question speak for itself it seems quite certain, that it was intended as a health measure, and not as a measure for the comfort of passengers. In

fact, the order expressly defines its purpose "to protect the health of the general traveling public."

Appellees also insist that section 4855, Code of 1906, confers upon the Railroad Commission all of the powers it possessed to regulate sanitary conditions, and that the power attempted to be exercised in this instance is not given in that section. This court has said, in *Railroad Co.* v. *Railroad Commission,* 94 Miss. 124, 49 So. 118:

"It is universally held that a railroad commission is a mere administrative or advisory board created to carry out the will of the legislature, and that, before it can do any act, it must be able to point to its grant of power from the legislature, and must be given in clear and express terms, and nothing will be had by inference."

It must be said that section 4855 does not confer the power assumed either by express terms or by inference. But the Railroad Commission points to section 4860 for its power. We do not believe it necessary to decide that the Railroad Commission may not require screened passenger coaches for the comfort of the traveling public, because we think that question is not before us in the present case. It may be reasonably said, that flies, bugs, mosquitoes, and other insects are a pestiferous lot, and that it would add very materially to the comfort of passengers if they were denied the privilege of entering passenger coaches. However, the Railroad Commission did not pass the order in question for the comfort of the passengers. The order, in its terms, was to safeguard the health of the traveling public, and while the scientific world now recognize that mosquitos are guilty of being the sole disseminators of malaria and yellow fever, it is also true that this fact was not known when the Railroad Commission was created and the Code sections referred to were passed. This being true, it is quite sure that the legislature did not have in mind health and sanitation when section 4860 was written. As before stated, it is possible that wire screens could have been foreseen when the statute was being considered as contributing to the

comfort of passengers, but it is somewhat difficult to be-
lieve that we were so far ahead of the times that we had
already convicted the flies and. mosquitoes of manslaugh-
ter.

So we have concluded that the statutes do not confer
upon the Railroad Commissioners any power to pass
health ordinances except in regard to the matters men-
tioned in the statute; that the statutes do not confer the
power assumed in this case. It is not claimed that the
order was for the comfort of passengers, except in the
briefs, which are contradicted by the order. We do not
believe that the Commission can shift its base; it must
stand or fall upon the order itself.          *Affirmed.*

ETHRIDGE, J., took no part in this decision.